COMMONWEALTH vs. GEOFFREY D. GORDON.

Middlesex.  April 5, 1983. — June 7, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Evidence,* Offer of proof, Tape recording. *Practice, Criminal,* Severance. *Motor Vehicle,* Operating to endanger.

No error was shown at the trial of criminal complaints in the exclusion of a tape recording of a police officer's prior testimony, offered for impeachment purposes, where the record failed to disclose either the grounds for the exclusion or any offer of proof concerning the tape recorded testimony. [353-354]

Statement of guidelines for the use of tape recordings rather than typed transcripts during court proceedings. [354-356]

The judge at the trial of complaints charging possession of cocaine and driving to endanger did not abuse his discretion in denying the defendant's motion for severance of the two complaints, where the charges arose from a single incident, the same witnesses were to testify as to each offense, and evidence of the defendant's possession of cocaine immediately after the incident would have been admissible in a separate trial for driving to endanger. [357-358]

At the trial of a defendant charged with operating a motor vehicle negligently so as to endanger the lives and safety of the public, the judge did not err in denying the defendant's motion for a required finding of not guilty. [358]

COMPLAINTS received and sworn to in the Second Eastern Middlesex Division of the District Court Department on December 3, 1980.

On appeal to the jury session of the First Southern Middlesex Division, the cases were tried before *Scannell,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Evan T. Lawson (James F. O'Brien* with him) for the defendant.

*Claudia R. Sullivan,* Assistant District Attorney, for the Commonwealth.

NOLAN, J.  The defendant was convicted by a jury of six in a District Court after an earlier bench trial by a District Court judge.  Following the Appeals Court's affirmance of the defendant's convictions of possession of a controlled substance (cocaine) and of operating a motor vehicle negligently so that the lives and safety of the public might be endangered, *Commonwealth* v. *Gordon*, 15 Mass. App. Ct. 901 (1982), we allowed his application for further appellate review.  The defendant filed a statement of the evidence with the trial court.  After "settlement and approval" (with amendments by the Commonwealth), it became part of the record in the Appeals Court. Mass. R. A. P. 8(c), as appearing in 378 Mass. 924 (1979).  We accept the Appeals Court's summary of this evidence which is reproduced in the margin. [1]

On this appeal, the defendant makes four claims of error: (1) the trial judge's refusal to allow him to play an audio recording of the testimony given at the bench trial by one of the arresting officers for the purpose of impeaching that officer's testimony at the jury trial; (2) the denial of his motion for severance; (3) the denial of his motion for a required

---

[1] "On December 2, 1980, two Watertown police officers arrived at the scene of a three-vehicle accident. 'The physical evidence indicated that . . . [Gordon's] automobile had left the roadway, crossed the curb onto the shoulder of the road, grazed a small building, and entered a parking lot striking a parked automobile pushing it into another parked automobile.' The front of Gordon's 'automobile was smashed and the windshield shattered.' There was testimony from an officer that Gordon 'told him all he could remember from the accident was he reached over to get his briefcase and the next thing he knew the accident happened.'

"Gordon, 'unsteady on his feet' had been injured.  His 'eyes were unblinking and glassy,' his 'speech was slurred,' and, in one officer's opinion, Gordon 'was operating under the influence of "something."'' He was placed under arrest and taken to the police station, seated alone in the back seat but handcuffed behind his back, with his brief cases beside him. During the ride one officer observed Gordon 'turn and reach into one of the briefcases' and 'saw a "dark object" in . . . [Gordon's] hand.' The officer told him to 'keep out of his case and that he could get what he needed at the [police] station.' At the police station, the officer 'found a vial on the seat behind where . . . [Gordon] was sitting.' The vial's contents were analyzed and found to contain cocaine."

finding of not guilty on the driving to endanger complaint; (4) the admission in evidence of the vial of cocaine, its contents, and an analysis of the contents. There was no error and we affirm the convictions.

1. *The use of audio recordings for impeachment.* At the jury trial, the defendant asked Officer Robert Eldredge, one of the arresting officers, a number of questions concerning his testimony at the bench trial in an effort to impeach the officer's credibility by "demonstrating discrepancies between his prior testimony and his statements to the jury, and by showing a richness of detail in his later testimony which was lacking in his former testimony and thus suggestive of recent contrivance,"[2] as the defendant argues in his brief. Officer Eldredge testified that he did not recall his earlier testimony. The defendant then attempted to introduce in evidence, for impeachment, an audio recording of Officer Eldredge's previous testimony. The judge refused to allow the recording to be played.

As the Appeals Court noted, the statement of the evidence discloses neither the context nor the grounds of the judge's decision. More important, the record does not disclose whether the defendant made an offer of proof concerning the contents and relevancy of the audio recorded testimony. Without an offer of proof it is not possible in this case to determine whether there was error in excluding the evidence. See *Commonwealth* v. *Kleciak,* 350 Mass. 679, 693 (1966). It is the defendant's burden to demonstrate the

---

[2] According to the statement of the evidence, Officer Eldredge "was asked what he had testified [to at the bench trial] concerning his whereabouts at the time of the call, the distance from the point the defendant's vehicle had left the road to when it came to rest, whether the defendant had sat in the cruiser with his briefcases before he had been placed under arrest, whether the defendant had given the officer his driver's license, whether his district court testimony omitted the defendant's asking for a taxi, refusing to get into his cruiser, refusing the request by the Fire Department Ambulance Squad that the defendant seek medical attention, what the defendant had been arrested for, whether the officer had left the defendant alone sitting in the cruiser prior to being arrested."

error of which he complains and he has failed to do so.[3]   See
*Commonwealth* v. *Sansone,* 252 Mass. 71, 75 (1925).

We take this opportunity to express our views concerning
the use of audio recordings for purpose of impeachment
since our view differs from that expressed by the Appeals
Court.   The Appeals Court stated that "[a]lthough for
many purposes (see, e.g. *Commonwealth* v. *Vaden,* 373
Mass. 397, 400-401 [1977]) a tape recording may be admit-
ted in evidence, a defendant, desiring to use for impeach-
ment purposes a tape recorded in a District Court, may rea-
sonably be required to have transcribed the relevant portion
of the tape-recorded testimony.   In that way, usual methods
of impeachment may be followed without having the jury
hear the whole tape."   15 Mass. App. Ct. at 902.

We note that a committee appointed in 1972 by the late
Chief Justice of the District Courts, Franklin N. Flaschner,
to investigate ways of preserving testimony in District Court
proceedings strongly recommended the use of audio record-
ing over any other method because of its accuracy, ease of
operation, and relative inexpensiveness.   Report on the
Preservation of Testimony in Proceedings in the District
Courts at 31, 87-115 (November 30, 1973) (report).   In his
report, Chief Justice Flaschner wrote of the advantages of
audio recording over stenography.   "While an audio record-
ing may preserve many of the pauses, hesitancies, irrelevan-
cies and poor grammar of some persons, these are things of
which trials are made.   It is the words uttered that comprise
the record, not another's version of them.   Audio recordings
will also preserve inflections and aural demeanor which
typewritten transcripts will not.   They are not instan-
taneously editable as are a reporter's notes, and are a more
accurate record of courtroom events.   On playback they
carry with them the flavor as well as the letter of what oc-
curred and are superior to the 'cold record' which otherwise
results.   To the extent that this ultimate accuracy produces

---

[3] The defendant did not offer the tape as an exhibit at the jury trial nor
did he include a copy of the tape as part of the record on appeal.

a record that is perfectly reflective of what happened in court, it should be favored." *Id.* at 49-50.

Chief Justice Flaschner contemplated that audio recordings be used routinely in place of typed transcripts. "For case preparation, impeachment and other reasons, and even the preparation of a draft report to the Appellate Division, a tape recording will do just as well [as a typed transcript], particulary if the tape is quickly available to counsel and is inexpensive. The system must, of course, be capable of producing a reasonably accurate typed transcript of proceedings if one is necessary, but that should be the exception. In the routine case a copy of a tape recording of the proceedings should suffice, provided it can be conveniently played by counsel or the court." *Id.* at 77.

While we have in the past discussed the use of audio recordings during trial proceedings, see, e.g., *Commonwealth* v. *Watson,* 377 Mass. 814, 834-836 (1979) (taped interrogation); *Commonwealth* v. *Vaden,* 373 Mass. 397, 400-401 (1977) (taped testimony at probable cause hearing); *Blazo* v. *Superior Court,* 366 Mass. 141, 153 (1974) (common use of taped testimony is adumbrated), we have not been presented with the precise issue raised here.[4] We now conclude that it would be error for a trial judge to refuse to admit in evidence an audio recording of testimony at a District Court bench trial simply because the testimony is not presented in the traditional typewritten transcript form.[5] The admission of recorded testimony on tape shall be subject to the following limitations.

First, the testimony sought to be introduced must be otherwise admissible. See *Commonwealth* v. *Watson,*

---

[4] Courts in a number of other jurisdictions have left to the trial judge's sound discretion the decision whether to admit otherwise relevant audio recordings in evidence for a variety of purposes. See, e.g., cases collected in *Commonwealth* v. *Watson,* 377 Mass. 814, 834-835 (1979).

[5] In making this ruling, we take into account the time, difficulty, and cost involved in preparing an accurate transcript of District Court proceedings recorded on audio tape. Chief Justice Flaschner's committee, for example, found that each hour of courtroom testimony required four to six hours for a typist to transcribe, assuming the recording was of good quality and an accurate log was kept. Report at 23-24.

*supra* at 834-836 (no abuse of discretion to exclude tape recorded interrogation which contained much inadmissible hearsay). The judge would not be in error if he refused to admit an audio recording in evidence for reasons which would justify refusal to admit any other form of evidence of the same material. See *Commonwealth* v. *Chase,* 372 Mass. 736, 747 (1977). See also cases collected in P.J. Liacos, Massachusetts Evidence 135-143 (5th ed. 1981); G. L. c. 233, § 80, as amended by St. 1975, c. 457, § 2 (verified transcripts from notes of stenographers admissible where otherwise competent). Second, the audio recording must be properly authenticated as the official sound recording of the District Court proceedings. See Dist. Mun. Cts. R. Crim. P. 9(A); Dist. Mun. Cts. R. Civ. P. 114. Third, the judge may require that the audio recording be edited to include only relevant material, subject, of course, to the right of the opponent of the evidence to introduce appropriate material under the doctrine of "verbal completeness." See *Commonwealth* v. *Watson, supra* at 824-836. The judge may conduct a voir dire examination to determine the relevancy of any material. It is expected that counsel and the court will cooperate to avoid needless interruptions and delays of trial for this purpose. Fourth, it is the proponent's burden to bring to the court an audio recording that provides an adequate, audible and coherent rendition of the prior testimony. See *Katz* v. *Commonwealth,* 379 Mass. 305, 313 (1979). The judge may also conduct a voir dire on this issue. Counsel will be expected to make reasonable stipulations as to the identity of voices heard on the tape. Fifth, the judge may in his discretion allow a properly authenticated transcript to be provided to the jury as an aid to understanding the audio recording. Sixth, the right of a party to use an audio recording should not be construed as an obligation to do so. Prior testimony, where otherwise admissible, may still be proved through a competent witness or by other appropriate method. Seventh, the proponent shall have the duty to ensure that proper equipment for playing the audio recording is available in the courtroom.

2. *Severance.* This court has set forth the criteria for use in deciding whether to allow a motion to sever in *Commonwealth* v. *Blow,* 362 Mass. 196, 200 (1972), and most recently in *Commonwealth* v. *Sylvester,* 388 Mass. 749, 753-758 (1983). We need not repeat these principles here. We agree with the Appeals Court that the contemporaneity of the events which gave rise to the charges against the defendant and the identity of the witnesses as to each offense bring the judge's decision to deny severance within the orbit of his discretion. *Commonwealth* v. *Borans,* 379 Mass. 117, 149 (1979).[6]

The defendant claims that he was prejudiced by trial of the two complaints together because "[t]he jury would be likely to equate the possession of cocaine with negligent driving and therefore fail to evaluate each charge independently of the merits of the Commonwealth's case." Evidence that the defendant was operating his vehicle while under the influence of cocaine would be relevant to the charge of driving to endanger. *Commonwealth* v. *Scott,* 359 Mass. 407, 410 (1971) (conviction of involuntary manslaughter warranted on evidence that driver was under influence of alcohol). Testimony concerning the defendant's behavior and the evidence of his possession of a vial of cocaine immediately following the accident would have been admissible in a separate trial for driving to endanger. See *Commonwealth* v. *Gallison,* 383 Mass. 659, 671-673 (1981).

The defendant does not claim that "a particular defense tactic or right was foreclosed by the joinder," *id.* at 672, nor were the crimes charged against him inflammatory or of a kind to suggest that he was a man of criminal propensity. See *Commonwealth* v. *Hoppin,* 387 Mass. 25, 33 (1982). "Prejudice requiring severance does not arise from the mere fact that the defendant's chances for acquittal [on one charge] might

---

[6] It does not appear from the record that the defendant ever submitted an affidavit in support of his motion to sever as required by Mass. R. Crim. P. 9(d)(2), 378 Mass. 859 (1979). Because the Commonwealth makes no argument on this point, however, we have not considered the effect of this failure on the appeal.

have been better had [the complaints] been tried separately . . . ." *Commonwealth* v. *Gallison, supra* at 672. It is the defendant's burden to show that he was prejudiced by the failure to sever. *Id.* We cannot conclude on this record that the "best interests of justice" were disserved by the judge's refusal to sever the complaints or that the defendant was denied a fair trial as to either complaint.[7] *Commonwealth* v. *Sylvester, supra* at 757-758.

3. *Motion for required finding of not guilty on the driving to endanger charge.* There was no error in the judge's refusal to direct a verdict for the defendant on this issue because there was evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979). This evidence consisted, in part, of the defendant's admission to the officer about reaching to get his briefcase, the testimony concerning the defendant's state of confusion immediately after the accident, and his possession of cocaine.

4. *The admission of the vial, its contents, and the certificate of analysis.* We agree with the Appeals Court's disposition of this issue. The fact that the vial's contents were not separately tagged goes only to the weight of the evidence and not to its admissibility. *Commonwealth* v. *Baptiste,* 372 Mass. 700, 709 (1977).

*Judgments affirmed.*

---

[7] The defendant does not argue that the admission of evidence of his driving to endanger prejudiced his trial for possession of cocaine. We therefore do not decide this question. We note, however, that Gordon's defense counsel conceded at oral argument that "there was testimony which, if believed, would warrant the jury in inferring that Mr. Gordon had removed this vial from his brief case and put it behind him in the police cruiser."