COMMONWEALTH *vs.* DANIEL I. CASS.

Barnstable. October 5, 1983. — August 16, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Death. Homicide. Common Law. Statute,* Construction. *Motor Vehicle,*
Homicide. *Practice, Criminal,* Retroactivity of judicial holding. *Words.*
"Person."

A viable fetus is a "person" within the meaning of the vehicular homicide
statute, G. L. c. 90, § 24G (*b*). [800-807] WILKINS, LIACOS & ABRAMS,
JJ., dissenting.
This court's conclusion that a viable fetus is a "person" within the meaning of
the vehicular homicide statute, G. L. c. 90, § 24G (*b*), is to be applied
prospectively only. [807-808]

COMPLAINT received and sworn to in the Barnstable Division
of the District Court Department on November 26, 1982.

The case was reported to the Appeals Court by *Shea,* J., on
a statement of agreed facts. The Supreme Judicial Court ordered
direct review on its own initiative.

*Jerome Doyle* for the defendant.

*Don L. Carpenter,* Assistant District Attorney, for the Com-
monwealth.

HENNESSEY, C.J. This case presents the question whether
a viable fetus is a "person" for purposes of our vehicular
homicide statute, G. L. c. 90, § 24G. At the request of both
parties, a judge of the District Court reported the case to the
Appeals Court on a statement of agreed facts. Mass. R. Crim.
P. 34, 378 Mass. 905 (1979). We transferred the case here on
our own motion. We decide that a viable fetus is a person for
purposes of G. L. c. 90, § 24G. However, because our decision
may not have been foreseeable, we do not apply it to this case
or to other homicides occurring before the date of this decision.

The agreed facts are summarized as follows. On November
24, 1982, the defendant, while operating a motor vehicle on a

public way, struck a female pedestrian who was eight and one-half months pregnant. The fetus died in the womb and was delivered by Caesarean section. It was determined by autopsy that the fetus was viable at the time of the incident and that it died as a result of internal injuries caused by the impact of the vehicle operated by the defendant.

The defendant is charged with violating the homicide by motor vehicle statute, G. L. c. 90, § 24G (*b*), as appearing in St. 1982, c. 376, § 2, which provides in pertinent part: "Whoever . . . operates a motor vehicle while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants, or stimulant substances, all as defined in section one of chapter ninety-four C, or the vapors of glue, or whoever operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of another person, shall be guilty of homicide by a motor vehicle . . . ."[1] The question before us is whether a viable fetus is within the meaning of the term "person" as thus used. The question is one of legislative intent.

1. The vehicular homicide statute was enacted in 1976, see St. 1976, c. 227, shortly after our decision in *Mone* v. *Greyhound Lines,* 368 Mass. 354 (1975). In *Mone,* the Justices of this court unanimously agreed that a viable fetus would be considered a person for purposes of our wrongful death statute.[2] We found "neither reason nor logic in choosing live birth over viability," and we stated that "conditioning a right of action on whether a fatally injured child is born dead or alive is not only an artificial and unreasonable demarcation, but is unjust as well." *Id.* at 360-361. The similarities between *Mone* and the instant case are striking: like the instant case,

---

[1] The complaint tracks the language of a previous version of § 24G (*b*). The amended version, quoted above, became effective before the date of the collision, and therefore applies to this case.

[2] In *Mone,* although it was unanimously agreed that a viable fetus is a person for purposes of the wrongful death statute, three of the seven Justices concluded that the decision should be applied prospectively only. *Id.* at 364-365.

*Mone* involved the construction of the word "person" in a statute as applied to an eight and one-half month old, viable fetus killed as a result of alleged negligence on the part of the operator of a motor vehicle. "The Legislature is presumed to have had knowledge of the decisions of this court." *MacQuarrie* v. *Balch,* 362 Mass. 151, 152 (1972). Further "[i]n construing a statute, words are to be accorded their ordinary meaning and approved usage." *Hashimi* v. *Kalil,* 388 Mass. 607, 609 (1983). *Commonwealth* v. *Gove,* 366 Mass. 351, 354 (1974). In keeping with approved usage, and giving terms their ordinary meaning, the word "person" is synonymous with the term "human being." An offspring of human parents cannot reasonably be considered to be other than a human being, and therefore a person, first within, and then in normal course outside, the womb. As will be shown later in this opinion, heretofore the law has not recognized that the pre-born could be the victims of homicide because of difficulties in proving the cause of death; but problems in proving causation do not detract from the personhood of the victim. By the use of the terms "person" and "the public," the Legislature has given no hint of a contemplated distinction between pre-born and born human beings. As demonstrated in *Mone,* no good reason for such an arbitrary distinction is apparent. Despite the fact that *Mone* was a civil case, we can reasonably infer that, in enacting § 24G, the Legislature contemplated that the term "person" would be construed to include viable fetuses. We so conclude, and construe the statute accordingly.

2. There is alternative reasoning to support our decision. Even if we assume that the Legislature did not consider the issue, we may assume that the Legislature intended for us to define the term "person" by reference to established and developing common law. We look to the common law as to whether a viable fetus can be the victim of a homicide and conclude that it can. We therefore conclude that a viable fetus is within the ambit of the term "person" as used in the statute.

Where the Legislature uses nonspecific terms in criminal statutes, this court frequently provides necessary construction and definition from the common law. Many examples of this re-

course to the common law have particular relevance to the type of statute (vehicular homicide) we confront here. The reports are replete with our common law decisions defining the terms "murder" and "manslaughter" as used in homicide statutes. See, e.g., *Commonwealth* v. *Matchett,* 386 Mass. 492, 501-508 (1982) (a homicide committed while engaged in the commission of a felony is murder only if the circumstances demonstrate the defendant's conscious disregard of risk to human life); *Commonwealth* v. *Lewis,* 381 Mass. 411 (1980), cert. denied sub nom. *Phillips* v. *Massachusetts,* 450 U.S. 929 (1981) (the infliction of injuries resulting in death after more than a year and a day is murder); *Commonwealth* v. *Godin,* 374 Mass. 120, 126-127 (1979), cert. denied, 436 U.S. 917 (1978) (an employer's disregard for probable loss of life, amounting to wanton or reckless conduct and resulting in a foreseeable death is manslaughter); *Commonwealth* v. *Golston,* 373 Mass. 249, 251-256 (1977), cert. denied, 434 U.S. 1039 (1978) (infliction of injuries resulting in "brain death" is murder); *Commonwealth* v. *Welansky,* 316 Mass. 383, 396-401 (1944) (a death resulting from a defendant's wanton or reckless disregard for the safety of his patrons is manslaughter). See also *Commonwealth* v. *Webster,* 5 Cush. 295, 303 (1850) ("[T]he statute law of the commonwealth . . . nowhere defines the crimes of murder or manslaughter, with all their minute and carefully-considered distinctions and qualifications. For these, we resort to that great repository of rules, principles, and forms, the common law"). In addition, there are cases too numerous to require citation in which we have refined the definitions of the statutory terms "malice aforethought," "premedicated," and "extreme atrocity or cruelty." We have defined many of the terms used in G. L. c. 90, § 24, the parent statute of § 24G. See, e.g., *Commonwealth* v. *Bridges,* 285 Mass. 572 (1934) ("intoxicating liquor"); *Commonwealth* v. *Arone,* 265 Mass. 128 (1928) ("wilful, wanton and reckless"); *Commonwealth* v. *Uski,* 263 Mass. 22 (1928) ("operate"); *Commonwealth* v. *Clarke,* 254 Mass. 566 (1926) ("operate"); *Commonwealth* v. *Lyseth,* 250 Mass. 555 (1925) ("under the influence"); *Commonwealth* v. *Henry,* 299 Mass. 19 (1917) ("operate");

*Commonwealth* v. *Horsfall,* 213 Mass. 232 (1913) ("reckless"). The Appeals Court has done the same for § 24G itself. See, e.g., *Commonwealth* v. *Glowski,* 15 Mass. App. Ct. 912 (1982) ("negligently"); *Commonwealth* v. *Drew,* 11 Mass. App. Ct. 517, 523 (1981) ("cause"); *Commonwealth* v. *Burke,* 6 Mass. App. Ct. 697, 699-700 (1978) ("negligently"). See also *Commonwealth* v. *Gordon,* 15 Mass. App. Ct. 901, 901-902 (1982) (finding evidence sufficient to warrant a verdict of negligent operation so as to endanger the public), aff'd, 389 Mass. 351 (1983). We think it is clear from long usage that the process of judicial definition of statutory terms is within the expectation of the Legislature when it employs undefined terms in criminal statutes.

Many of the courts which have considered the question have decided that the destruction of a fetus should be considered a homicide but, because that rule would conflict with established precedent, have concluded that establishing such a rule requires legislative action. In so doing, these courts have relied on three interrelated rationales.[3] The defendant relies on these rationales but we reject them all as either inapplicable or unpersuasive.

First, we reject the notion that we are unable to develop common law rules of criminal law because the Legislature has occupied the entire field of criminal law. While this may be true in code jurisdictions, it is not true in this Commonwealth, where our criminal law is largely common law. For proof of this conclusion we need only look to the litany of cases cited above wherein this court has provided definitive common law rulings required by general language used by the Legislature. Language used by the Legislature controls and limits the common law prerogatives of this court but, as illustrated by the

---

[3] See, e.g., *People* v. *Guthrie,* 97 Mich. App. 226, 232, 237-238 (1980); *State in the Interest of A.W.S.,* 182 N.J. Super. 278, 281-282 (1981) (quoting *Guthrie*); *State* v. *Dickinson,* 23 Ohio App. 2d 259 (1970), aff'd, 28 Ohio St. 2d 65 (1971); *State* v. *Amaro,* R.I. , (1982) (448 A.2d 1257, 1260 [R.I. 1982]). See also *Keeler* v. *Superior Court,* 2 Cal. 3d 619 (1970); *People* v. *Greer,* 79 Ill. 2d 103 (1980); *Hollis* v. *Commonwealth,* 652 S.W.2d 61 (Ky. 1983); *State* v. *Brown,* 378 So. 2d 916 (La. 1979); *State* v. *Willis,* 98 N.M. 771 (Ct. App. 1982); *State* v. *Dickinson,* 28 Ohio St. 2d 65 (1971).

many cases cited herein and by innumerable other cases, the administration of our criminal law would be all but unworkable without the application of the common law within the limits permitted by statutory language.

Second, we reject the suggestion that, in using the term "person" in defining a statutory crime, the Legislature intended to crystallize the *preexisting* common law with regard to who may be the victim of a homicide. Preexisting common law meaning may be a useful indication of legislative intent. However, to conclude that mere use of the term was intended to freeze its meaning is to make a shibboleth of a rule of construction. See *Keeler* v. *Superior Court,* 2 Cal. 3d 619, 641 (1970) (Burke, Acting C.J., dissenting). We have developed and redefined the meaning of the common law applicable to other criminal statutes. See, e.g., *Commonwealth* v. *Gould,* 380 Mass. 672, 680-683 (1980) (deliberate premeditation); *Commonwealth* v. *Golston, supra* at 251-256 (death); *Commonwealth* v. *Lewis, supra* at 415-419 (cause of death). We can do so in the case before us. "In the absence of any indication that the Legislature directed its attention to the problem, its use of the word 'person' should not prevent us from arriving at a result in harmony with the general tendency of our law." *Mone* v. *Greyhound Lines, supra* at 365 (Braucher, J., dissenting).

Third, we are not persuaded that the rule of strict construction of criminal statutes prevents us from construing the word "person" to include viable fetuses. A strict construction would be that the statute incorporates the traditional rule and leaves us no flexibility to modify it. We have already indicated our disapproval of a rule that statutes incorporate only preexisting common law. Moreover, we note that when we clarify an evolving or unsettled area of law, we can make our decisions prospective in order to ensure fairness to the defendant (see, e.g., *Commonwealth* v. *Klein,* 372 Mass. 823 [1977]) and to avoid unconstitutional application of statutes to defendants who did not have the benefit of the warning provided by our construction. See *Commonwealth* v. *Gallant,* 373 Mass. 577 (1977); *Robinson* v. *Berman,* 594 F.2d 1 (1st Cir. 1979);

*Balthazar* v. *Superior Court,* 573 F.2d 698 (1st Cir. 1978). Our consideration of whether we should apply our decision prospectively satisfies the rationale of the rule of strict construction, which, therefore, need not be applied. We may address and remedy unfairness through prospectivity analysis rather than mechanical application of the rule of strict construction. Cf. Hall, Strict or Liberal Construction of Penal Statutes, 48 Harv. L. Rev. 748, 759 (1935) ("Simply because a liberal construction might work injustice in some cases is no proper reason for inflicting on the people the rule of strict construction in all cases"). See also Horack, The Disintegration of Statutory Construction, 24 Ind. L.J. 335, 344 (1949). In this case we can ensure fairness to the defendant without restricting the application of the statute in future cases.

3. We turn now to the common law definition of homicide. Since at least the fourteenth century, the common law has been that the destruction of a fetus in utero is not a homicide. Means, The Phoenix of Abortional Freedom, 17 N.Y.L.F. 335, 336-362 (1971) (hereinafter Means). Winfield, The Unborn Child, 8 Cambridge L.J. 76, 78-80 (1942). Although this court has never had a case that directly presented the question, we have .assumed that the stated rule is a part of our common law, and we have restated it as recently as 1976. See *Commonwealth* v. *Edelin,* 371 Mass. 497, 512 (1976). See also *Commonwealth* v. *Parker,* 9 Met. 263, 266 (1845) (Shaw, C.J.). The rule has been accepted as the established common law in every American jurisdiction that has considered the question.[4] But the antiquity of a rule is no measure of its soundness. "It is revolting to have no better reason for a rule of law than that so it was laid

---

[4] E.g., *Keeler* v. *Superior Court,* 2 Cal. 3d 619 (1970) (murder); *People* v. *Greer,* 79 Ill. 2d 103 (1980) (murder); *Hollis* v. *Commonwealth,* 652 S.W.2d 61 (Ky. 1983) (murder); *State* v. *Brown,* 378 So. 2d 916 (La. 1979) (murder); *People* v. *Guthrie,* 97 Mich. App. 226 (1980) (vehicular homicide); *State in the Interest of A.W.S.,* 182 N.J. Super. 278 (1981) (vehicular homicide); *State* v. *Willis,* 98 N.M. 771 (Ct. App. 1982) (vehicular homicide); *State* v. *Dickinson,* 28 Ohio St. 2d 65 (1971) (vehicular homicide); *State* v. *Amaro,* R.I. (1982) (448 A.2d 1257 [R.I. 1982]) (vehicular homicide); *State* v. *Larsen,* 578 P.2d 1280 (Utah 1978) (vehicular homicide).

down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Address by O.W. Holmes, 10 Harv. L. Rev. 457, 469 (Jan. 8, 1897). It is time to reexamine the grounds upon which this ancient rule was laid down.

The rationale offered for the rule since 1348 is that "it is difficult to know whether [the defendant] killed the child or not . . . ." Means, *supra* at 339 (translating a case reported in Fitzherbert, Graunde Abridgement [1516]). See Bryn, An American Tragedy: The Supreme Court on Abortion, 41 Fordham L. Rev. 807, 815-827 (1973). That is, one could never be sure that the fetus was alive when the accused committed his act.[5] However, difficulty of proving causation is no sound reason for denying criminal liability. Medical science now may provide competent proof as to whether the fetus was alive at the time of a defendant's conduct and whether his conduct was the cause of death. We have long since concluded that fear of speculation is not a sufficient ground for denying a civil right of action for prenatal injuries. See *Keyes* v. *Construction Serv., Inc.,* 340 Mass. 633, 635-637 (1960). See also *Mone* v. *Greyhound Lines, supra* at 359-360; *Torigian* v. *Watertown News Co.,* 352 Mass. 446, 448-449 (1967); *Bliss* v. *Passanesi,* 326 Mass. 461, 463 (1950).[6] We do not consider it a

---

[5] That the difficulty of proof of causation was the dominant rationale, or at least became such, is demonstrated by the companion rule, that the infliction of prenatal injuries resulting in death after live birth is homicide. See Means, *supra* at 351. The latter rule was of dubious authority when first stated by Lord Chief Justice Coke. E. Coke, Third Institute *50. See Means, *supra* at 343-345. But such has been his influence that the rule has been accepted as law in England and in those American jurisdictions that have decided the question. See, e.g., *The Queen* v. *West,* 175 Eng. Rep. 329 (1848); *Rex* v. *Senior,* 1 Moody's Crown Cas. 346 (1832); *People* v. *Bolar,* 109 Ill. App. 3d 384 (1982); *State* v. *Anderson,* 135 N.J. Super. 423 (1975), aff'd in part, 173 N.J. Super. 75 (1980).

[6] We have similarly concluded that advances in medical science have eliminated difficulty of proving causation as a rationale for the year and a day rule in homicide cases. *Commonwealth* v. *Lewis,* 381 Mass. 411, 414-415 (1980). *Commonwealth* v. *Golston,* 373 Mass. 249, 255 (1977).

sufficient reason for refusing to consider the killing of a fetus a homicide.[7]

We think that the better rule is that infliction of prenatal injuries resulting in the death of a viable fetus, before or after it is born, is homicide.[8] If a person were to commit violence against a pregnant woman and destroy the fetus within her,[9] we would not want the death of the fetus to go unpunished.[10] We believe that our criminal law should extend its protection to viable fetuses.[11]

4. In deciding whether our decision can fairly be applied to the conduct of the defendant, the two important considera-

---

[7] In the instant case it is stipulated that doctors were able to detect a fetal heartbeat after the collision and that the fetus expired as a result of injuries received in the collision. To apply a rule grounded in difficulty of proof would be illogical.

[8] On the facts of this case we need express no view on the question whether it is homicide to cause the death of a nonviable fetus. The single issue reported to us concerns a viable fetus, and it is stipulated that the fetus in question was viable. See the language of the dissenting Justices in *Mone, supra* at 366, quoting *Torigian* v. *Watertown News Co.*, 352 Mass. 446, 448 (1967), that, in a civil case, "nonviability of a fetus should not bar recovery."

[9] See, e.g., *Keeler* v. *Superior Court*, 2 Cal. 3d 619, 623 (1970) (defendant and his wife had obtained an interlocutory decree of divorce; upon learning that she was pregnant by another man, he said, "I'm going to stomp it out of you," and shoved his knee into her abdomen; the eight month old fetus was delivered stillborn); *Hollis* v. *Commonwealth*, 652 S.W.2d 61 (Ky. 1983) (defendant told his seven months' pregnant wife that he did not want a baby, then forced his hand up her vagina, killing the fetus). See also *People* v. *Greer*, 79 Ill. 2d 103 (1980) (defendant repeatedly struck and kicked his eight and one-half months' pregnant girlfriend, killing both her and the fetus).

[10] Although such behavior can be punished under the abortion statute, G. L. c. 112, §§ 12K-12U, the Legislature has made clear that that statute is not exclusive. "Conduct which violates the provisions of this act, which also violates any other criminal laws of the commonwealth, may be punished either under [this act] or under such other applicable criminal laws." G. L. c. 112, § 12N, as appearing in St. 1977, c. 397.

[11] We are cognizant of the constitutional limits imposed by such cases as *Colautti* v. *Franklin*, 439 U.S. 379 (1979), *Planned Parenthood* v. *Danforth*, 428 U.S. 52, 81-84 (1976), and *Roe* v. *Wade*, 410 U.S. 113, 165-166 (1973). See *Commonwealth* v. *Edelin*, 371 Mass. 497, 513-515 (1976). See also G. L. c. 112, §§ 12K-12U.

tions are the foreseeability of the new rule and the extent to which the defendant might have relied on the old rule. Our decision may have been unforeseeable. We have never been called upon to decide the issue, but the rule that a fetus cannot be the victim of a homicide is the rule in every jurisdiction that has decided the issue, except those in which a different result is dictated by statute. See, e.g., Cal. Penal Code § 187 (West Supp. 1984); Ill. Ann. Stat. c. 38, § 9-1.1 (Smith-Hurd Supp. 1984). We find it highly unlikely that the defendant could have relied on prior law in shaping his conduct. His alleged conduct was a clear violation of G. L. c. 90, § 24. He thus had notice of the criminality of his conduct. See *Mullaney v. Wilbur,* 421 U.S. 684, 690 n.10 (1975). However, his liability for one specific consequence of his conduct and the possibility of increased punishment resulting therefrom may have been unforeseeable. An unpredictable judicial decision which has the effect, as here, of increasing the possible available punishment is objectionable, and may raise constitutional issues. See *Commonwealth v. Harrington,* 367 Mass. 13, 20-21 (1975); *Bouie v. Columbia,* 378 U.S. 347, 353-354 (1964). Furthermore, some considerations favoring prospective decisionmaking may not be exclusively concerned with reliance of the defendant. Prospective-only application of a decision which may have been unforeseeable avoids the appearance of "badly motivated or erratic action" and ensures impartiality and regularity in decisionmaking. *Commonwealth v. Lewis, supra* at 418. We therefore conclude that our decision should not be applied to the defendant in this case.

A viable fetus is a "person" for purposes of the vehicular homicide statute as applied to homicides occurring after the date of this decision. The case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

WILKINS, J. (dissenting, with whom Liacos and Abrams, JJ., join). The court rightly says that its "decision . . . may

have been unforeseeable." *Supra* at 808. "[T]he rule that a fetus cannot be the victim of a homicide is the rule in every jurisdiction that has decided the issue, except those in which a different result is *dictated* by statute" (emphasis supplied). *Id.* The court further characterizes the conclusion it reaches as "[a]n unpredictable judicial decision." *Id.* I think the court is right. I would never have guessed it.

The court asserts that the Legislature intended to adopt the construction of the word "person" used by this court in *Mone* v. *Greyhound Lines,* 368 Mass. 354 (1975), a civil case involving the tort law of the Commonwealth. Nowhere does the court explain why the Legislature should be assumed to have disregarded hundreds of years of the criminal common law nor why this court should ignore the commendable judicial restraint of every other court that has considered the point. See *supra* at 805-807. Moreover, the development of civil liability for injuries to a fetus is "quite distinguishable" from the criminal law. See *Commonwealth* v. *Edelin,* 371 Mass. 497, 513 n.23 (1976) (plurality opinion).

"Criminal statutes must be strictly construed." *Commonwealth* v. *Howard,* 386 Mass. 607, 617 (1982) (O'Connor, J., concurring). "The result is disturbing. Every jurisdiction which has considered the issue . . . holds to the contrary." *Commonwealth* v. *Coleman,* 390 Mass. 797, 811 (1984) (Nolan, J., dissenting, joined by Lynch, J.). The question whether the killing of a viable fetus by reason of the negligent operation of a motor vehicle should be a separate crime is for the Legislature as a matter of wise social policy, and a strong case can be made for appropriate legislation to that effect. "It is clear that the matter in which this court now intrudes is a matter for the Legislature." *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 664 (1981) (Hennessey, C.J., dissenting). The court's extended reliance on its power to construe common law crimes and judge-made rules is beside the point. That power has no place in the construction of an exclusively statutory crime.

If the court truly believed that the Legislature intended to include a viable fetus within the meaning of "person" in the

motor vehicle homicide statute, it should have made its interpretation applicable to this defendant. How can it justify ignoring such a legislative determination? As it is, the court has prospectively amended the statute. I think that this is an inappropriate "exercise of raw judicial power." *Doe* v. *Doe,* 365 Mass. 556, 565 (1974) (Hennessey, J., dissenting in part), quoting *Doe* v. *Bolton,* 410 U.S. 179, 222 (1973) (White, J., dissenting).