## STATE OF CONNECTICUT *v.* ROBERT COURCHESNE

Superior Court      Judicial District of Waterbury      File No. CR98273002

Memorandum filed May 19, 1999

*John A. Connelly,* state's attorney, with whom was *Eva B. Lenczewski,* senior assistant state's attorney, for the state.

*Ronald Gold,* senior assistant public defender, with whom was *Audrey A. Felsen,* certified legal intern, for the defendant.

DAMIANI, J. For the purpose of this probable cause hearing the court finds, with the acquiescence of the defendant as to counts two, three and four of the information, that the defendant's actions resulted in the death of Antonia Rodgers (Antonia) and that Antonia was a viable unborn fetus at the time the defendant stabbed her mother, Demetris Rodgers.

The question presented in this case is one of first impression in Connecticut; specifically, whether the defendant can be tried for murder and capital felony for the killing of an infant who succumbs forty-two days following a Caesarean birth necessitated by the fatal stabbing of her pregnant mother?

In his memorandum dated March 2, 1999, the defendant set forth his claims and thereby framed the issues to be decided by this court: first, that the defendant cannot be charged with the murder of an unborn child, even if it was viable at the time of the defendant's conduct; second, even if Antonia survived long enough to be "born alive" the Connecticut legislature did not intend the murder statute or the capital felony statute to apply to such a situation; third, that the defendant did not have the "conscious objective" to cause such "inchoate person's" death at the time he acted; and fourth, to prosecute the defendant for murder and capital felony would violate the defendant's right to notice

and his right not to be prosecuted under ex post facto law.

The defendant's primary contention regarding probable cause is that, even if the allegations of the state are true, the death of Antonia does not amount to murder under General Statutes § 53a-54a, because Antonia was not a "person," as defined by the criminal code, at the time of the defendant's actions. The defendant argues that he is not, therefore, eligible to be charged under the capital felony statute, General Statutes § 53a-54b (8) and (9), under the theories of "murder of two or more persons" and "murder of a person under sixteen years of age." The defendant claims, therefore, that the court lacks the legal basis to find probable cause for the charge of the murder of Antonia and the two capital felony charges based on her death.

Both the murder statute, § 53a-54a, and the capital felony statute, § 53a-54b, require the death of a "person." For the purposes of the Penal Code, General Statutes § 53a-3 (1) defines "person" as "a human being." "There is no explicit definition of the term 'human being' in the General Statutes." *State* v. *Anonymous (1986-1)*, 40 Conn. Sup. 498, 499, 516 A.2d 156 (1986). This statutory definition is not sufficient to dispose of this issue without further inquiry. In order to determine whether the death of Antonia qualifies as the death of a person under §§ 53a-54a and 53a-54b, this court must engage in statutory interpretation.

"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.

. . . Furthermore, we presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. . . . In addition, when the statute being construed is a criminal statute, it must be construed strictly against the state in favor of the accused." (Citations omitted; internal quotation marks omitted.) *State* v. *Cardwell*, 246 Conn. 721, 738–39, 718 A.2d 954 (1998). "Moreover, [it] is . . . a rule of statutory construction that statutes in derogation of the common law are to be strictly construed. . . . No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) *Copeland* v. *Warden*, 225 Conn. 46, 53, 621 A.2d 1311 (1993).

The words of the statutes involved in the present case do not resolve the question of whether the death of a baby from injuries inflicted in utero can be the basis for charges of murder and capital felony. Section 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ." The capital felony statute, § 53a-54b, provides in pertinent part: "A person is guilty of a capital felony who is convicted of any of the following . . . (8) murder of two or more persons at the same time or in the course of a single transaction; or (9) murder of a person under sixteen years of age." The question raised by the defendant is whether Antonia, who was an eight and one-half month old fetus at the time of the defendant's actions, qualifies as a person under these statutes. The definition of a person under the Penal Code is found in § 53a-3 (1). Section 53a-3 (1) provides: " 'Person' means a human being, and, where

appropriate, a public or private corporation, a limited liability company, an unincorporated association, a partnership, a government or a governmental instrumentality . . . ." The language of these statutes does not shed any light on whether the death of a baby from injuries inflicted in utero may support murder or capital felony charges.

In the absence of clear language in the statutes themselves, the court must turn to the legislative history of the statutes for guidance. See *State* v. *Grullon*, 212 Conn. 195, 200, 562 A.2d 481 (1989). The legislative history of the murder, capital felony, and definitional statutes, although extensive, provides no definitive answer to the question of the intent of the legislature regarding the current situation. It has been noted that "[t]he murder section of the new Penal Code was 'based partly on the New York Revised Penal Law and partly on the Model Penal Code . . . .' General Statutes Ann. § 53a-54a, Commission Comment—1971 (West 1985)." *State* v. *Anonymous (1986-1)*, supra, 40 Conn. Sup. 500. Under New York's Penal Code, a "person" is defined as "a human being who has been born and is alive." New York Penal Law § 125.05 (1) (McKinney 1998). The Model Penal Code defines a "human being" as "a person who has been born and is alive." Model Penal Code § 210.0 (1), 10 U.L.A. 532 (1974). The court adopted this reasoning in *State* v. *Anonymous (1986-1)*, supra, 500–501, to find that the death of a fetus who was stillborn did not support a separate count of murder.

This court finds that the definition of a "person" in Connecticut criminal law includes those who are born and are alive. This definition does not exlude Antonia. Walter M. Palmer, a physician, testified at the probable cause hearing that Antonia was born and remained alive for forty-two days before she succumbed to her injuries.

This interpretation of the statute's applicability to the facts of the present case finds support in the common law "born alive" rule.

Analysis of "common law principles[1] governing the same general subject matter"; *State* v. *Cardwell*, supra, 246 Conn. 738; reveals that, under the common law, the death of a fetus could stand as a basis for murder as long as the fetus was born alive and subsequently died of injuries inflicted in utero.[2] The same common-law rules upon which the court relied in *State* v. *Anonymous (1986-1)*, supra, 40 Conn. Sup. 502–503, lead to the contrary result in the present case. Although a person could not be convicted if the child was stillborn, a

---

[1] The defendant contends that the court should consider other statutes that explicitly refer to fetuses. Two of these statutes deal with the disposal of dead bodies and fetuses and related record keeping; General Statutes §§ 7-47b (b) and 7-64; and the third statute deals with anatomical gifts; General Statutes § 19a-279a. These statutes are irrelevant to a determination of the scope of the murder and capital felony provisions of the criminal code because the legislation does not govern "the same general subject matter." (Internal quotation marks omitted.) *State* v. *Cardwell*, supra, 246 Conn. 738.

[2] The defendant argues that the court cannot look to the common law to aid in resolving this issue because General Statutes § 53a-4, the "savings clause" that allows the court to recognize principles of criminal liability or defenses not included in the code, applies by its terms only to General Statutes §§ 53a-5 through 53a-23. The argument follows that, because the murder, capital felony, and definitional statutes do not fall within those sections, the court cannot use the savings clause to include an analysis of the common law in coming to a decision in the present case. The examination of the common law here is based, however, on the rules of statutory interpretation. See *State* v. *Cardwell*, supra, 246 Conn. 738–39. Notably, the Connecticut Supreme Court has repeatedly visited the common law when interpreting criminal statutes, including the murder and capital felony statutes. See *State* v. *Miranda*, 245 Conn. 209, 215–17, 715 A.2d 680 (1998) (noting common-law rules concerning duty to act in interpreting General Statutes § 53a-59); *State* v. *Solek*, 242 Conn. 409, 420–21, 699 A.2d 931 (1997) (using common-law principles of accessory liability to aid in interpreting § 53a-54b [7]); *State* v. *Ross*, 230 Conn. 183, 195–96, 646 A.2d 1318 (1994) (turning to common law to aid in interpreting § 53a-54b [5]); *Copeland* v. *Warden*, supra, 225 Conn. 53 (applying common law in interpreting General Statutes § 53a-37).

person could be "convicted of homicide at common law for the death of a child as the result of prenatal injuries, [if] the child was first born alive." Annot., Homicide—Unborn Child, 40 A.L.R.3d 447 (1971). "If the child is born alive, despite an attack upon it and an injury to the mother while it was in the mother's womb, and the child thereafter dies as a result of the prenatal injury, a homicide has been committed." 2 F. Wharton, Criminal Law (15th Ed. Torcia 1994) § 116, p. 140. Under the common-law rule previously stated, Antonia's death can be the basis of a homicide prosecution.

A review of the sources of legislative intent reveals that the class of victims protected by Connecticut's homicide statutes includes those who are born alive but later die of injuries inflicted in utero. The "born alive" rule has strong roots in the common law, and the criminal code and "does not fairly express" an "innovation upon [this] common law [rule]." (Internal quotation marks omitted.) *Copeland* v. *Warden*, supra, 225 Conn. 53.

The defendant correctly states that the rules of strict construction and lenity applicable to penal statutes are especially pertinent to a death penalty statute.

It is also true that "unless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." *State* v. *Ross*, 230 Conn. 183, 200, 646 A.2d 1318 (1994).

The rule of lenity, however, "comes into play only if the statute remains ambiguous after all sources of legislative intent have been explored." *State* v. *Ledbetter*, 240 Conn. 317, 331 n.12, 692 A.2d 713 (1997); see also *State* v. *Hinton*, 227 Conn. 301, 317–18, 630 A.2d 593 (1993).

The rule of lenity does not apply to require the reading of the statutes urged by the defendant. The process of

statutory interpretation has revealed that the murder and capital felony statutes as applied to the facts of the present case are not ambiguous. Antonia was born and lived for forty-two days before she died of her prenatal injuries. The defendant's primary contention is that the definition of a "person" includes only those who are born and alive at the time of the defendant's actions for the purposes of the criminal code. This construction does not find support from the words of the statutes, the legislative history of the statutes, or the common-law principles regarding the same subject matter. To the contrary, the legislative history of these statutes and a review of the common law on this point leads to the conclusion that the death of a baby who has been born alive from injuries inflicted in utero is a basis for a charge of murder. Statutes should not be construed as altering the common law unless they do so expressly. See *Copeland* v. *Warden*, supra, 225 Conn. 53. These statutes do not remain ambiguous after "all sources of legislative intent have been explored." *State* v. *Ledbetter*, supra, 240 Conn. 331 n.12. Therefore, the rule of lenity does not require dismissal of those charges against the defendant that are based on the death of Antonia.

The defendant argues that, even if the court finds that Antonia qualifies as a person under the relevant statutes, allowing the murder and capital felony charges against the defendant based on her death to stand constitutes a violation of the federal due process protections. The defendant argues that at the time he acted he had no notice and could not have known that her death could result in liability for murder. The defendant relies on the lack of statutory language including unborn children as "persons" and the court's decision in *State* v. *Anonymous (1986-1)*, supra, 40 Conn. Sup. 498, in contending that the law at the time of his actions was that Antonia's death could not constitute a murder.

It is a basic principle of constitutional law "that a criminal statute must give fair warning of the conduct that it makes a crime. . . ." *Bouie* v. *Columbia*, 378 U.S. 347, 350, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). The statute must give "a fair warning . . . to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle* v. *United States*, 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816 (1931). Due process does not prohibit application of the process of statutory interpretation to a criminal statute. The Connecticut Supreme Court has stated that "[r]eferences to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain the statute's meaning . . . . Due process does not require statutes to provide a laundry list of prohibited conduct. [L]aws may be general in nature so as to include a wide range of prohibited conduct. The constitution requires no more than a reasonable degree of certainty." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilchinski*, 242 Conn. 211, 224, 700 A.2d 1 (1997).

Sections 53a-54a (a) and 53a-54b (8) and (9) applied to the defendant under the facts of the present case at the time the defendant acted. Under the common law, Antonia's death would fall under the rule that an action for homicide stands as long as the person was born alive before her death. That rule was not altered by the codification of the criminal law. In fact, *State* v. *Anonymous (1986-1)*, supra, 40 Conn. Sup. 502–503, on which the defendant relies, arguing that the criminal code altered the common-law rule, expressly follows the common-law rule. In that case, the court applied the common-law rule to find that the death of a stillborn baby cannot support a murder charge, stating that "[i]t is also assumed that the legislature, in enacting the murder statute, was familiar with the general rules of the common law." Id., 502. The court may reference "the

common law . . . to ascertain the statute's meaning." (Internal quotation marks omitted.) *State* v. *Wilchinski*, supra, 242 Conn. 224. As far as it stands for the proposition that Connecticut follows the common-law rule on this point, the court's decision in *Anonymous (1986-1)* can be considered to have actually given notice that the defendant's actions concerning Antonia constituted a murder separate from that of her mother. See *State* v. *Thompson*, 197 Conn. 67, 78–79, 495 A.2d 1054 (1985) (looking to precedent to establish due process notice); *State* v. *Tyson*, 195 Conn. 326, 332–33, 487 A.2d 1091 (1985) (same).

The defendant also argues that application of the common-law rule in the present case would amount to a violation of the federal ex post facto clause. The defendant's ex post facto clause claim fails for many of the same reasons as the due process claim. Laws that violate the ex post facto clause include "[e]very law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime when committed," or a law "which makes more burdensome the punishment for a crime, after its commission . . . ." (Emphasis in original; internal quotation marks omitted.) *Collins* v. *Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). As discussed previously, the rule which applies to establish the defendant's liability was not created after he acted. That rule existed before the murder and capital felony statutes were enacted and continues to be in effect after their enactment. See *State* v. *Anonymous (1986-1)*, supra, 40 Conn. Sup. 502–503. To apply the "born alive" rule to this defendant, therefore, would not make "more burdensome the punishment for a crime, after its commission . . . ." *Collins* v. *Youngblood*, supra, 42.[3]

---

[3] The Connecticut Supreme Court has found the application of common-law doctrine to a specific criminal statute as a basis for liability appropriate despite the lack of any prior cases finding that such liability existed. See *State* v. *Miranda*, 245 Conn. 209, 214–21, 715 A.2d 680 (1998). While recognizing that no prior case had applied the duty to protect an abused child to

The defendant argues that the "born alive" rule should only be applicable prospectively, and has been so applied in other jurisdictions to avoid constitutional problems. The defendant relies on two cases from other jurisdictions, *Commonwealth* v. *Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984), and *State* v. *Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984). In each case, the court held that the death of a fetus in the womb was sufficient to satisfy the relevant homicide statutes. See *Commonwealth* v. *Cass*, supra, 801; *State* v. *Horne*, supra, 447. As each court acknowledged, these holdings that a still-born infant is a possible homicide victim were not supported by prior law; therefore, each decision was applied prospectively, a special procedure allowed in those jurisdictions. See *Commonwealth* v. *Cass*, supra, 808; *State* v. *Horne*, supra, 447. These cases are inapposite.

This court, therefore, finds that the state has proffered sufficient evidence to support a finding of probable cause that, at the time of her death, Antonia was a person.

This does not end the court's inquiry into whether or not prosecution of the defendant for the murder of Antonia under § 53a-54a and capital felony under § 53a-54b (8) and (9) should be approved and may continue.

The defendant alleges in his motion to dismiss that there is no logical or rational basis to conclude that there was any concurrence between the mens rea and the actus reus of the charged offenses in counts two, three and four of the information.

Section 53a-54a (a) provides in pertintent part: "A person is guilty of murder when, with intent to cause

an adult member of a household who was unrelated to the child, the court, in *Miranda,* applied a common-law duty to act in finding that the defendant could be found guilty of a violation of General Statutes § 53a-59 (a) (3), assault in the first degree. See also *State* v. *Diaz,* 237 Conn. 518, 531–32, 679 A.2d 902 (1996); *State* v. *Ross,* supra, 230 Conn. 282–83.

the death of another person, he causes the death of such person or of a third person . . . ." "The elements of intentional murder with which the defendant was charged under . . . § 53a-54a are (1) intent [and] (2) causation . . . ." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 74, 621 A.2d 728 (1993); see also *State* v. *Newsome*, 238 Conn. 588, 598, 682 A.2d 972 (1996) (stating that "the elements of [§ 53a-54a] are intent and causation").

The intent required by § 53a-54a (a) may be supplied under the doctrine of transferred intent. "The clear meaning of the statute leads to the result that, when a person engages in conduct with the intent to kill someone, there can be a separate count of murder for every person actually killed by the conduct." *State* v. *Hinton*, supra, 227 Conn. 309. When a defendant, therefore, fires a shotgun toward a group of people intending to kill only one, but in fact kills three, the defendant is liable for three separate murders. See id., 309–10. If the state has proffered sufficient evidence of the defendant's intent to kill the mother, the doctrine of transferred intent applies that intent to the child. The defendant, therefore, is liable for a second murder.

"Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 673, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). The state proffered evidence at the probable cause hearing that the defendant stabbed Demetris Rodgers seven times with a knife. One stab wound was to the heart, and six were to the posterior abdominal wall. The defendant's use of a knife to cause such serious injuries evidences his intent to kill Demetris Rodgers. As required by § 53a-54a (a), therefore, "with intent to cause the death of

another person," Demetris Rodgers, the defendant caused "the death of . . . a third person," Antonia. Just as the defendant's intent to kill one person was transferred to the additional victims in *State* v. *Hinton*, supra, 227 Conn. 309, this defendant's intent to kill Demetris Rodgers is applicable to Antonia's death.

Obviously, there are many instances where an adult victim has died some considerable time after the infliction of the fatal blow or wound. If the victim recovers and survives, whether by reason of medical or surgical treatment, or otherwise, there is no homicide; yet, if the victim dies from such wounds, it is murder. While such medical or surgical treatment may be a so-called intervening factor between the point of infliction of injury and resultant survival or death, nevertheless, the issue of homicide is resolved by the initial circumstances that caused the death.

There is no logical reason why any different rule should apply to an unborn fetus who is successfully delivered alive and lives independent of his mother for a reasonable time; at least for sufficient time so as not to be "stillborn," as that term is accepted by the medical profession and our society.

The state must also provide sufficient evidence that the defendant's actions caused the victim's death. "To prove causation, the state is required to demonstrate that the defendant's conduct was a 'proximate cause' of the victim's death—i.e., that the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries and that the defendant's conduct was not superseded by an efficient intervening cause that produced the injuries." *State* v. *Wassil*, 233 Conn. 174, 181, 658 A.2d 548 (1995). The state proffered evidence that Demetris Rodgers was dead on arrival at the hospital emergency room. Palmer then performed an emergency cesarean section and delivered Antonia.

The state proffered evidence that Antonia died of global anoxic encephalopathy forty-two days after her birth. In other words, Antonia's death was caused by her mother's prenatal death. This chain of causation is sufficient to establish the defendant's liability under § 53a-54a for Antonia's death. It was the stab wounds to her mother that caused not only her mother's death, but also, Antonia's injuries and death. In the present case, "the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries . . . ." *State* v. *Wassil*, supra, 181; see also *State* v. *Munoz*, 233 Conn. 106, 122, 659 A.2d 683 (1995); *State* v. *Leroy*, 232 Conn. 1, 12–13, 653 A.2d 161 (1995). Furthermore, the defendant has conceded that the state has proffered sufficient evidence to support a finding that his actions resulted in Antonia's death.

A finding of probable cause for the capital felony counts logically follows from a finding of probable cause for the murder count involving Antonia. The defendant is charged with two counts of capital felony under § 53a-54b (8) and (9). Section 53a-54b (8) provides that a person who is convicted of the "murder of two or more persons at the same time or in the course of a single transaction" is guilty of a capital felony. Probable cause for the murder charge involving Antonia is based on the same transaction that killed her mother. Having determined that Antonia is a "person" for the purposes of the criminal code, there is sufficient evidence for a probable cause finding by this court that the defendant murdered two "persons at the same time or in the course of a single transaction." General Statutes § 53a-54b (8). It is undisputed that Antonia was under the age of sixteen at all relevant times. A finding of probable cause for the murder count involving Antonia, therefore, mandates a finding of probable cause under § 53a-54b (8) and (9).

Accordingly, probable cause is found as to counts two, three and four of the information; prosecution of the defendant on those counts is approved and may continue.