135 N.J. Super. 423 (1975)
343 A.2d 505
STATE OF NEW JERSEY, PLAINTIFF,
v.
WINFIELD ANDERSON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 14, 1975.
*425 Mr. William T. Cahill, Jr., Assistant Presecutor, for plaintiff (Mr. Thomas Shusted, Camden County Prosecutor, attorney).
Mr. Carl L. Taraschi, Assistant Deputy Public Defender, for defendant (Mr. Stanley C. Van Ness, Public Defender, attorney).
WINGATE, J.C.C., Temporarily Assigned.
This matter is now before this court upon motion by defendant for a judgment of acquittal at the conclusion of the case. While the motion is addressed to the indictment generally, it is more vigorously urged towards the first four counts which charge two murders and two murders while armed and in possession of a gun.
Although there has been some factual challenge to the State's case with respect to the identification of defendant as the alleged murderer (which was contested by defense introduction of alibi witnesses), nevertheless, the proofs are, at this stage,[1] clear and sufficient for a jury to find, beyond a reasonable doubt, that in fact the twin infants borne by a certain Nikki Spearman died, after being born alive, as a result of a gunshot wound received by the mother when she was seven or more months pregnant with the twin fetuses.
After the gunshot wound the mother was delivered of the twin fetuses by a Caesarian operation and each fetus lived separate and apart from the mother for a limited period of time. One, later named John Lee Spearman, died approximately some three hours after delivery. John Lee received *426 a bullet wound across his back as the missile passed through the mother. The cause of death was stated as a bullet wound and additional causes were attributed to immaturity. The other, later named Jonathan Lee Spearman, died approximately some 15 hours after delivery. He had not been struck by the bullet and death was attributed to immaturity. Obviously, the premature births were directly the result of the bullet wound which the mother received.
In support of the motion addressed to the four counts regarding the alleged murders, the defense advances the following arguments:
1. Assuming there was criminal conduct in the shooting by someone, such criminal conduct was directed against the mother and may not be imputed to the yet unborn viable fetuses.
2. Our common law excludes the killing of a fetus from a homicide.
3. If the fetuses had been "still born" there would have been no homicide, and thus the intervening action of a doctor who delivered the fetus alive should not be the controlling factor as to whether a homicide took place.
4. The act of homicide relates back to the moment of the infliction of the wound, or the time of the actual shooting, at which time neither John Lee Spearman nor Jonathan Lee Spearman were lives in existence entitled to the protection of the New Jersey law against murder.
These issues have never been formally resolved by any known decisions of the courts of the State of New Jersey. That is not to say, however, that our courts have not made reference to the common law principles that may apply to such issues.
Fetuses and unborn issue have been the subject matter of our courts and other jurisdictions, including the United States Supreme Court. These considerations have arisen in many different issues. They include those of the rights of unborn issue to inherit after birth; rights of action by such after-born fetuses for damages for wrongful injury; the *427 status of a fetus as it may affect the legality of abortion statutes, and finally, even the status of an unborn child in our criminal law.[2]
The status of a fetus or unborn child was considered in Smith v. Brennan, 31 N.J. 353 (1960), a case recognizing the rights of an infant to sue for injuries sustained while in the womb of its mother. There the court reviewed the various legal rights of such unborn children, indicating that the law of property and decedents' estates considers him in being for purposes beneficial to his interests (emphasis supplied), and cited further illustrations of the legal rights of unborn infants in other civil actions. Significantly, the court stated, "Our criminal law regards an unborn child as a separate entity." See In re Vince, 2 N.J. 443 (1949), and State v. Siciliano, 21 N.J. 259 (1956).
That a fetus may be the victim of murder if it be born alive has long been a part of our common law. As early as the 17th Century Coke held that, "but if the childe be born alive and dyeth of the potion, battery, or other cause, this is murder; for in law it is accounted a reasonable creature, in rerum natura, when it is born alive". Coke, Institutes 58 (1648). This principle was iterated and expanded by both Blackstone and Hale in the 18th Century. Likewise, in State v. Cooper, 22 N.J.L. 52 (1849) the court stated:
*428 It was anciently holden that the causing of an abortion by giving potion to, or striking a woman big with child, was murder, but at this day it is said to be a great misprison only, and not murder, unless the child be born alive, and die thereof. [Citing 1 Hawk B 31, § 16]
Reference has been made to the proposed New Jersey Penal Code in the report of the Commission dated October 1971 and its recommended definitions of "homicide" (§ 2C:11-2(a)) and "human being" (§ 2C:11-1(a)). While this proposed Code and its commentary have often been cited by our courts in support of various propositions, such proposed Code, never having been adopted by the Legislature is not statutory law of our State nor is it binding upon our trial courts, except where some specific quotation has been endorsed by our appellate courts, which usually is limited to a statement contained in the commentary. That it is not and may well not be the future law of this State (so far as these sections are concerned) is evident from the pending draft of the New Jersey Code of Criminal Justice introduced in the Assembly (Bill No. 3282) which materially differs from the quoted sections of the 1971 draft of the Code. The definition of human being has been deleted from the present draft under consideration. Thus, the common and case law herein before cited by this court is deemed to be the law of this case.
Finally, it is urged by defendant that because medical science and the skill of a doctor successfully delivered the two fetuses, that this is an intervening action which should not transform an assault upon the pregnant woman into a homicide of the surviving infants. In other words, the nature of the crime should not depend upon subsequent events or the actions of another.
Obviously, there are many instances where an adult victim has died some considerable time after the infliction of the fatal blow or wound. If the victim recovers and survives, whether by reason of medical or surgical treatment, or otherwise, there is no homicide; yet, if he dies from such *429 wounds, it is murder. While such medical or surgical treatment may be a so-called intervening factor between the point of infliction of injury and resultant survival or death, nevertheless, the issue of homicide is resolved by the initial circumstances that caused the death. See State v. Clark, 104 N.J. Super. 67 (Law Div. 1968), aff'd. 110 N.J. Super. 562 (App. Div. 1970), certif. denied 57 N.J. 135 (1970), cert. den. 401 U.S. 958, 91 S.Ct. 988, 28 L.Ed.2d 243. If it be the criminal act of the assault or wound that is the precipitating and contributory cause of death, then the prior weakened condition of the victim does not lessen the criminal responsibility for causing death. The victim is not obliged to supply a guarantee of good health to a robber. See State v. Loray, 41 N.J. 131 (1963). There is no logical reason why any different rule should apply to an unborn fetus who is successfully delivered alive and lives independent of his mother for a reasonable time  at least for sufficient time so as not to be "still born," as that term is accepted by the medical profession and our society.
It is therefore the determination of this court that fetuses which are the victims of a criminal blow or wound upon their mother and are subsequently born alive, and thereafter die by reason of a chain of circumstances precipitated by such blow or wound, may be victims of murder.
The court thus concludes that John Lee Spearman and Jonathan Lee Spearman were persons within the meaning of the homicide laws of New Jersey on March 9, 1975, the date of the alleged homicide.
The court is likewise satisfied that the posture of the proofs are such that the motion as to the remaining courts numbered 5 through 10 should likewise be denied under the rule of State v. Reyes, 50 N.J. 454 (1967).
The motion for judgment of acquittal is denied and the matter shall be submitted to the jury.
NOTES
[1] As to the standard to be applied in determining the motion at the conclusion of the State's case, see State v. Reyes, 50 N.J. 454, 458-459 (1967), holding that, "the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt."
[2] In Keeler v. Superior Court of Amador Cty., 2 Cal.3d 619, 87 Cal. Rptr. 481, 470 P.2d 617 (1970), the California Supreme Court held that a viable fetus, wounded while in the mother's womb and then dying within the womb so as to be delivered still-born, could not cause one to be answerable under the California homicide statute. However, the court recognized the common law requirement that once an infant had been born alive and then died as a result of a pre-natal injury, such offense would be a homicide. See also, Abrams v. Foshee, 3 Iowa 274 (Sup. Ct. 1856); Clarke v. State, 117 Ala. 1, 23 So. 671 (Sup. Ct. 1898); Morgan v. State, 148 Tenn. 417, 256 S.W. 433 (Sup. Ct. 1923); Annotation, "Homicide based on killing of unborn child," 40 A.L.R.3d 444 (1971).