**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Garland SPENCER,**
**Defendant-Appellant.**

**No. 87–1218.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1988.

Decided Feb. 17, 1988.

David G. Alvarez, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Roger W. Dokken, First Asst. U.S. Atty., Chief, Criminal Section, Phoenix, Ariz., for plaintiff-appellee.

Before WRIGHT, WALLACE and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Spencer, a Native American convicted of murder, raises on appeal two issues of first impression. First, does infliction of injuries on a fetus, who is born alive but dies as a result of those injuries, constitute murder under 18 U.S.C. § 1111? Second, does the Major Crimes Act, granting federal jurisdiction over certain crimes between Native Americans, incorporate this inclusive definition of murder? We hold that fetal infanticide is murder within the meaning of both statutes, and affirm the district court's order denying Spencer's motion to dismiss his murder charge for failure to state a federal crime.

## BACKGROUND

Spencer assaulted Rena Blackgoat, also a Native American, kicking and stabbing her in the abdomen. At the time of the assault, she was pregnant. She was hospitalized and treated successfully for life-threatening injuries. A fetal monitor indicated that the fetus was distressed. An emergency Caesarean section was performed in an attempt to save the child's life. The autopsy report said:

> Baby Boy Blackgoat died of intrauterine trauma leading to hypoxia and intracerebral hemorrhage sustained when his mother, while she was pregnant with him, received a blunt and sharp trauma to the abdomen. Based on the circumstances reported ... the manner of death of this infant is considered homicide.

A medical examiner found that the baby lived for ten minutes. Spencer stipulated in his plea agreement that the infant was born alive.

He was charged with: Assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 1153 and 113(f); second degree murder of Baby Boy Blackgoat in violation of 18 U.S.C. §§ 1153 and 1111; and a sepa-

rate incident of assault with intent to commit rape in violation of 18 U.S.C. §§ 1153 and 113(a). He pleaded guilty to the charge of murder, subject to this appeal, and the other two charges were provisionally dismissed.

There is federal jurisdiction of all three charges under the Major Crimes Act, 18 U.S.C. § 1153.

ANALYSIS

*Use of Common Law in Construing a Federal Statute*

██ Spencer alleges that the judge relied on a federal common law of crimes in denying the motion to dismiss for failure to state a criminal charge. That misstates what happened.

The court did not base its order on non-statutory grounds. Rather, it used the state and common-law inclusions of fetal infanticide within the definition of murder for guidance in construing 18 U.S.C. § 1111. 18 U.S.C. § 1111(a) states: "Murder is the unlawful killing of a human being with malice aforethought." The question is whether Congress intended to include fetal infanticide within the statutory definition, "killing of a human being."

18 U.S.C. § 1111 was passed by Congress to "enlarge the common law definition" of murder. Special Joint Comm. on the Revision of the Laws, Revision and Codification of the Laws, Etc., H.R.Rep. No. 2, 60th Cong., 1st Sess., pt. 1 at 24 (1908). The enlarged § 1111 definition was "similar in terms to the statutes defining murder in a large majority of States." *Id.*

In 1908 it was well-established in common law that murder was the killing of one human being by another, and that an infant born alive that later died as a result of fetal injuries was a human being. *See* Annotation, *Homicide Based on Killing of Unborn Child,* 40 A.L.R.3d 444, 446–47 (1971); Meldman, *Legal Concepts of Human Life: the Infanticide Doctrines,* 52 Marq.L.Rev. 105, 106 (1968).[1] States confronting this question prior to 1908 had

unanimously considered infants born alive as human beings. *See, e.g., Clark v. State,* 117 Ala. 1, 23 So. 671 (1898). No court has ever held otherwise. *See, e.g., State v. Horne,* 282 S.C. 444, 319 S.E.2d 703 (1984); *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); *State v. Anderson,* 135 N.J.Super. 423, 343 A.2d 505 (1975), *rev'd on other grounds,* 173 N.J.Super. 75, 413 A.2d 611 (1980); *Keeler v. Superior Court of Amador County,* 2 Cal.3d 619, 470 P.2d 617, 87 Cal.Rptr. 481 (1970).

In view of Congress's intent to reflect the state and common-law definition of murder when it passed the statute, and the state and common-law acceptance of infants who died subsequent to birth due to fetal injuries as human beings, it seems clear that Congress intended fetal infanticide to be included within the statutory definition of "murder" under 18 U.S.C. § 1111.

██ Acceptance of this view defeats Spencer's other contentions. He argues that his indictment did not clearly state the charge against him, in violation of his Sixth Amendment rights. The conclusion that the murder of Baby Boy Blackgoat referred to in the indictment was the result of the prenatal injuries that caused the infant's death is inescapable. The indictment stated the elements of the offense with sufficient clarity to apprise the defendant of what to defend against. *See Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *United States v. Bohonus,* 628 F.2d 1167, 1173 (9th Cir.1980).

██ If Spencer means that the statute was impermissibly vague, the contention still has no merit. This court has held that the common-law meaning of a common-law term used in a federal criminal statute is a source of statutory precision in determining whether a statute is impermissibly indefinite. *See United States v. Dupree,* 544 F.2d 1050, 1051 (9th Cir.1976). A statute is not impermissibly indefinite if it gives a

---

1. In common law, controversy arose from the difficulty in determining whether the infant had existed independently from its mother prior to death, an essential element of the "live birth" rule. 40 A.L.R.3d 446–47.

person of ordinary intelligence fair notice that his contemplated activity is forbidden. *Id.* at 1052. Spencer has not asserted that he was unaware that the activities for which he was charged were forbidden.

Spencer next argues that use of common-law definitions in construing federal statutes constitutes federal court usurpation of the Congress's legislative prerogatives. It does not. Where there is no indication to the contrary, it is fair to assume that Congress used a word in its common-law sense. *See Gilbert v. United States,* 370 U.S. 650, 655, 82 S.Ct. 1399, 1402, 8 L.Ed.2d 750 (1962); *United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957); *see generally* 2A Singer, Sutherland Statutory Construction §§ 50.01, 50.04 (4th ed. 1984) (reference to common law useful in determining legislative intent).

*Narrow Construction of Statute Under the Major Crimes Act*

Finally, Spencer contends that the history of the Major Crimes Act bars use of the common and state law definitions of murder. He reasons that the Act is an exception to the rule of tribal jurisdiction and should be narrowly construed.

This court has used the common-law definition of a crime included in the Major Crimes Act without finding an impermissible infringement of a narrow construction of the Act. *See United States v. Johnson,* 637 F.2d 1224, 1245–46 (9th Cir.1980); *Dupree,* 544 F.2d at 1051.

CONCLUSION

Baby Boy Blackgoat's death was caused by prenatal injuries sustained during Spencer's assault of Rena Blackgoat. Under common and state laws, if the baby is born alive, this is murder. Congress intended to assimilate common and state law meanings into 18 U.S.C. § 1111. This court's interpretation of the Major Crimes

Act does not alter this analysis. We affirm the judgment.