561 A.2d 216

Andre WILLIAMS

v.

STATE of Maryland.

No. 134, Sept. Term, 1988.

Court of Appeals of Maryland.

July 27, 1989.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for petitioner.

Gary E. Bair, Asst. Atty. Gen., J. Joseph Curran, Jr., Atty. Gen., on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

The question presented is whether, under the common law of Maryland, the crime of manslaughter may be committed when an infant, born alive, dies shortly thereafter as a result of wounds criminally inflicted upon the infant's pregnant mother.

## I.

On June 1, 1987, the appellant Williams and Lamont Jones became embroiled in an argument over a photograph which allegedly depicted Williams engaged in sexual activity with Jones's girlfriend. In an attempt to obtain the photograph, Jones took Williams's wallet and ran off. Williams entered his home and called the police. Upon emerging, he saw Jones approaching him with a lead pipe. After Jones swung at him three times, Williams retreated to his house. When he re-emerged, Williams was armed with a bow and arrow. As he pursued Jones, he drew the arrow. He yelled to Jewel Lyles, a pedestrian, to "watch out" immediately before releasing the arrow in an apparent effort to shoot Jones. The arrow struck Lyles, lacerating her *vena cava*. She died from the massive loss of blood which she suffered as a result of the wound.

Lyles was nine months' pregnant at the time of the shooting. Her baby was born alive an hour before Lyles died; the baby died seventeen hours later as a result of the injury inflicted upon her mother.

Williams was convicted by a jury of two counts of manslaughter and one count of carrying a weapon openly with intent to injure. He was sentenced to consecutive terms of ten, ten, and three years imprisonment. On appeal, the judgments were affirmed by the Court of Special Appeals. *Williams v. State,* 77 Md.App. 411, 550 A.2d 722 (1988). We subsequently granted Williams's petition for a writ of certiorari.

The Court of Special Appeals recognized that manslaughter is a common law felony in Maryland. *See Connor v. State,* 225 Md. 543, 171 A.2d 699 (1961). It therefore focused on the common law of England, as required by Article 5 of the Maryland Declaration of Rights.[1] In determining the status of the Maryland common law, Chief Judge Gilbert, in a scholarly opinion for the court, primarily considered the writings of Lord Hale and Lord Coke. The court first acknowledged Hale's view that it was neither murder nor manslaughter if an infant, born alive, died as a result of injuries criminally inflicted upon the mother during pregnancy. 77 Md.App. at 417, 550 A.2d 722. As stated in 1 Hale, *Pleas of the Crown* 433 (1736):

"If a woman be quick or great with child, if she take or another give her any potion to make an abortion, or if a

---

1. Article 5 provides:
    "That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State...."

man strike her, whereby the child within her is killed, it is not murder nor manslaughter by the law of England, because it is not yet *in rerum natura,* tho it be a great crime, and by the judicial law of Moses was punishable by death, nor can it legally be made known whether it were killed or not, so it is, if after such child were born alive, and baptized, and after die of the stroke given to the mother, this is not homicide."

Lord Coke, the intermediate appellate court noted, was of a totally opposite mind. His view of the English common law was that a criminal homicide resulted if the child, born alive, died as a result of wounds inflicted upon the mother while the child was in the mother's womb. *Id.* at 418, 550 A.2d 722. As stated in 3 Coke, *Institutes* 50 (1648):

"If a woman be quick with childe, and by a potion or otherwise *killeth it in her wombe;* or if a man beat her, whereby the *childe dieth in her body,* and she is delivered of a *dead childe,* this is a great misprison, and no murder; but if the childe be *born alive* and dieth of the potion, battery, or other cause, this is murder: for in law it is accounted a reasonable creature *in rerum natura,* when it is born alive ... and so was the law holden in Bracton's time...."

The intermediate appellate court found that these commentators and authorities were aligned with Coke's view of the common law: 1 Blackstone, *Commentaries* 129–130 (1765); 1 Hawkins, *Pleas of the Crown* § 16 (1824); 1 *Warren on Homicide* § 71 (1914); and 2 Wharton's *Criminal Law* § 114 (1979). After noting that a number of American states accepted Coke's position, the court concluded that the English common law recognized Coke's "born alive rule." Specifically, it said that

"the common law of Maryland is when a child is born alive but subsequently dies as a result of injury sustained *in utero* the death of the child is homicide. It follows that the person who caused the injury to the fetus is chargeable with homicide."

77 Md.App. at 420, 550 A.2d 722.

## II.

The appellant sides with Hale's view of the English common law; he suggests that Hale was "generally considered a more reliable writer of the criminal law than Coke." He finds support in W. Lambarde, *Eirenarcha: or the Office of the Justice of the Peace* 226–227 (Rev. ed. 1592) and M. Dalton, *Country Justice* 348 (1690). Williams says that it is evident that these writers, along with Hale, correctly stated the common law because it was subsequently changed in England in the nineteenth century to conform with Coke's position. Williams suggests that the common law in any event is so unclear that should we *now* accept Coke's version of the common law, it should be afforded a purely prospective application, thereby requiring that the manslaughter conviction for the death of the Lyles baby be reversed. *See Lewis v. State*, 285 Md. 705, 404 A.2d 1073 (1979).

As we said in *Ireland v. State*, 310 Md. 328, 331, 529 A.2d 365 (1987), "[t]he determination of the nature of the common law as it existed in England in 1776, and as it then prevailed in Maryland either practically or potentially, and the determination of what part of that common law is consistent with the spirit of Maryland's Constitution and her political institutions, are to be made by this Court." Thus, in ascertaining the common law of this State in the absence of clear Maryland case law on the subject, we look to early English cases and writers on the common law, as well as cases from other jurisdictions.

Coke and Blackstone's view of the common law, as espoused prior to 1776, was applied in the later English cases of *Rex v. Senior*, 1 Mood. 347, 168 Eng.Rep. 1298 (1832) and *Queen v. West*, 2 Car. & K. 784, 175 Eng.Rep. 329 (1848). As here, each of these cases concluded that it was criminal homicide, manslaughter or murder, where injuries were feloniously inflicted upon a pregnant woman whose child, born alive, died as a result of the prenatal injury. *See also Rex v. Enoch*, 5 Car. & P. 539, 172 Eng.Rep. 1089 (1833) and *Rex v. Braun*, 6 Car. & P. 349, 172 Eng.Rep. 1272

(1834). Primarily on authority of Coke and Blackstone, early text authorities on the common law accepted the "born alive" rule enunciated by these commentators. *See* 2 *Bishop on Criminal Law* §§ 632–633 (7th ed. 1882); 3 Chitty, *Criminal Law* 800 (1978); *Clark's Criminal Law* §§ 61–62 (3rd ed. 1915); 1 East, *Pleas of the Crown* 227–229 (1803); 1 Hawkins, *Pleas of the Crown* 121 (6th ed. 1777); Hochheimer, *Criminal Law* § 338 (2nd ed. 1904); 1 *Russell on Crimes* 484 (5th ed. 1845); Wharton, *American Criminal Law*, § 942 (4th ed. 1857).

Hale's statement of the common law—that it is neither murder nor manslaughter if an infant, born alive, later dies as a result of injuries criminally inflicted upon the mother during pregnancy—has also been rejected by later text authorities on the common law. *See* Clark & Marshall, *Crimes* § 10.00 (7th ed. 1967); Perkins, *Perkins on Criminal Law* 27 (1957); LaFave & Scott, *Criminal Law*, 532 (1972).

State courts which have applied the common law in situations similar to that now before us have uniformly applied the Coke–Blackstone "born alive" rule. They have concluded, consistent with the opinion of the Court of Special Appeals, that criminal infliction upon a pregnant woman of prenatal injuries resulting in the death of her child after live birth may constitute manslaughter. *See Clarke v. State,* 117 Ala. 1, 23 So. 671 (1898); *Ranger v. State,* 249 Ga. 315, 290 S.E.2d 63 (1982); *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); *People v. Bolar,* 109 Ill.App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d 639, *cert. denied,* 109 Ill.App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d 639 (1982); *State v. Soto,* 378 N.W.2d 625 (1985); *State v. Anderson,* 135 N.J.Super. 423, 343 A.2d 505 (1975), *rev'd on other grounds,* 173 N.J.Super. 75, 413 A.2d 611 (1980); *United States v. Spencer,* 839 F.2d 1341 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 2908, 101 L.Ed.2d 939 (1988) (applied common law rule in interpretation of federal homicide statute).

So extensive is the acceptance of this common law rule that we conclude that it was indeed the law of Maryland in 1776. We are unpersuaded by the appellant's fleeting reference to other authorities allegedly articulating a contrary view of the common law. Consequently, we find no merit in Williams's argument that should Lord Coke's version of the common law be adopted in Maryland, it should be afforded only a prospective application and not applied to his manslaughter conviction for the death of the Lyles baby.

JUDGMENT AFFIRMED, WITH COSTS.