670 So.2d 1087 (1996)
STATE of Florida, Appellant/Cross-Appellee,
v.
Kawana M. ASHLEY, Appellee/Cross-Appellant.
No. 95-00510.
District Court of Appeal of Florida, Second District.
March 22, 1996.
*1088 Bernie McCabe, State Attorney, and C. Marie King and Douglas R. Ellis, Assistant State Attorneys, Clearwater, for Appellant/Cross-Appellee.
James Marion Moorman, Public Defender, Bartow, and Bruce Johnson, Assistant Public Defender, Clearwater; and Priscilla Smith and Catherine Albisa of Center for Reproductive Law & Policy, New York City, for Appellee/Cross-Appellant.
PATTERSON, Judge.
On August 26, 1994, the state charged Kawana Ashley in a two-count information with manslaughter, contrary to section 782.07, Florida Statutes (1993), and third-degree felony murder, contrary to section 782.04(4), Florida Statutes (1993), both offenses arising from the death of her infant daughter, Brittany Ashley. The predicate felony in the third-degree murder charge was abortion or attempted abortion. Ashley moved to dismiss the information, asserting that she could not be charged with either offense as a matter of law. The trial court granted the motion as to third-degree murder and denied it as to manslaughter. The state appeals from the dismissal of the third-degree murder charge. Ashley cross-appeals from the denial of the motion as to the manslaughter charge. We have jurisdiction to entertain the cross-appeal. See Lopez v. State, 638 So.2d 931 (Fla.1994). We affirm and certify the issues presented here to the Florida Supreme Court as questions of great public importance.

THE FACTS
On March 27, 1994, nineteen year old Kawana Ashley was in the third trimester[1] of pregnancy (twenty-five to twenty-six weeks' *1089 pregnant) when she shot herself in the abdomen through a pillow. The bullet traveled from the right to the left side of her abdomen and passed through the fetus's wrist. Ashley was taken to a hospital where the baby was born by Cesarean section. The baby, Brittany, then suffered multi-organ problems of premature birth that led to her death after fifteen days.
Ashley originally told the police that she had been the victim of a drive-by shooting. Later, after having been given Miranda[2] warnings, she admitted to the investigating officer that "she had shot herself in order to hurt the baby."

THE BORN ALIVE DOCTRINE
The state's theory of prosecution is grounded on the common law "born alive doctrine." In the context of the criminal law, this doctrine can be traced back to the writings of Sir Edward Coke, appointed Lord Chief Justice of the King's Bench by King James I in 1613. In his institutes, Coke wrote that, under the common law of England:
If a woman be quick with childe, and by a potion or otherwise killeth it in her wombe; or if a man beat her, whereby the childe dieth in her body, and she is delivered of a dead childe, this is a great misprison, and no murder; but if the childe be born alive and dieth of the potion, battery, or other cause, this is murder; for in law it is accounted a reasonable creature in rerum natura, when it is born alive....
Williams v. State, 316 Md. 677, 561 A.2d 216, 218 (1989) (quoting 3 Coke, Institutes 50 (1648)).
The doctrine remains viable and has been applied to a wide variety of circumstances throughout the United States. For example, in Jones v. Commonwealth, 830 S.W.2d 877 (Ky.1992), the defendant's vehicle collided with another vehicle and injured a woman who was thirty-two weeks' pregnant. The defendant was under the influence of alcohol at the time. The baby was delivered by Cesarean section and died fourteen hours later from injuries sustained in the collision. The defendant was convicted of second-degree manslaughter. In State v. Hammett, 192 Ga.App. 224, 384 S.E.2d 220 (1989), the defendant's vehicle collided with another in which the passenger was thirty-five weeks' pregnant. The baby was born by Cesarean section and died eleven hours later from injuries suffered in the accident. The defendant was convicted of homicide by vehicle. In Williams v. State, 316 Md. 677, 561 A.2d 216 (1989), the defendant was convicted of manslaughter after having shot an arrow into the abdomen of a woman who was nine months' pregnant. The baby was born by Cesarean section and lived seventeen hours. In People v. Hall, 158 A.D.2d 69, 557 N.Y.S.2d 879, appeal denied, 76 N.Y.2d 1021, 565 N.Y.S.2d 771, 566 N.E.2d 1176 (1990), the defendant missed his intended victim and shot a woman passerby, who was twenty-eight weeks' pregnant, in the abdomen. The baby was born by Cesarean section and died thirty-six hours later from complications of premature birth. The defendant was convicted of manslaughter. In Ranger v. State, 249 Ga. 315, 290 S.E.2d 63 (1982), the defendant was convicted of felony murder after shooting a woman who ultimately died of her wounds. The woman's baby was born by Cesarean section and died twelve hours later from immature lung development. In People v. Bolar, 109 Ill.App.3d 384, 64 Ill.Dec. 919, 440 N.E.2d 639 (1982), the defendant driver ran a stop sign and collided with a vehicle in which a pregnant woman was a passenger. The baby was born by Cesarean section and died from a deficiency of oxygen. The defendant was convicted of reckless homicide.
Consistent with these holdings, the born alive doctrine has been applied in this state. In Day v. Nationwide Mutual Insurance Co., 328 So.2d 560, 562 (Fla. 2d DCA 1976), a civil tort action, the court held, "A child injured before birth and born alive is a person under the Florida and Federal Constitutions. As such, that person is entitled to all of the constitutional rights, privileges and protections afforded to all other persons." In Knighton v. State, 603 So.2d 71 (Fla. 4th DCA 1992), a case factually similar to this case, Knighton was charged with third-degree *1090 felony murder for shooting a woman twenty-eight to thirty weeks' pregnant in the abdomen. The bullet lodged in the fetus's head. The baby was born alive by Cesarean section and later died of the wound. Knighton moved to dismiss the charge. The basis of the motion was that the information failed to state a crime as a matter of law. In upholding the application of the born alive doctrine, the Fourth District determined that the common law doctrine had not been abrogated by the adoption of the feticide and termination of pregnancy statutes, sections 782.09 and 390.001(10), Florida Statutes (1989), respectively. 603 So.2d at 72. We agree with our sister court and adopt its holding. Therefore, the questions presented for our determination are:
1. Under the laws of Florida, may a mother be charged with the death of her born alive child when the death was caused by the mother's self-inflicted injuries?
2. If so, may the predicate felony for the offense of third-degree murder be abortion or attempted abortion?

THIRD-DEGREE FELONY MURDER
Third-degree felony murder is the unlawful killing of a human being by a person engaged in the perpetration of, or in the attempt to perpetrate any felony other than those enumerated in section 782.04(4), Florida Statutes (1993). Abortion or attempted abortion, contrary to section 390.001(10)(a), Florida Statutes (1993), is not an enumerated felony. The information charges:
COUNT TWO
And the State Attorney aforesaid, under oath as aforesaid, further information makes that KAWANA ASHLEY, in the County of Pinellas, State of Florida, on or between the 27th day of March and the 11th day of April, in the year of our Lord, one thousand nine hundred ninety-four, in the County and State aforesaid, unlawfully, while engaged in the perpetration of, or in an attempt to perpetrate the felony offense of abortion, did, without any design to effect death, shoot herself in the stomach area, with a firearm, thereby inflicting upon Brittany Ashley, a human being, mortal wounds, of which said mortal wounds, and by the means aforesaid and as a direct result thereof, the said Brittany Ashley died; contrary to Chapter 782.04(4), Florida Statutes, and against the peace and dignity of the State of Florida.
Applying the step-by-step analysis of the elements of third-degree murder, as used in Knighton, to the facts of this case:
1. Brittany Ashley was a human being (under the common law born alive rule);
2. who was unlawfully killed;
3. by a person, Kawana Ashley;
4. while engaged in the perpetration of, or in the attempt to perpetrate, a felony (abortion) other than any of the enumerated felonies.
Facially, therefore, the information would appear to state a crime under the laws of Florida. We are confronted, however, with a question of first impression in this state whether an expectant mother can be guilty of the crimes of abortion or attempted abortion? Neither party to this appeal has cited to authority on this issue. Our research, however, has uncovered an abundance of authority on the issue of whether a woman can be a principal in or a coconspirator to the abortion of her fetus. See Jonathan M. Purver, Annotation, Woman Upon Whom Abortion Is Committed or Attempted as Accomplice for Purposes of Rule Requiring Accomplice Testimony, 34 A.L.R.3d 858 (1970). The almost universal conclusion is that she cannot, based upon another common law doctrine that considers the woman to be the victim of the crime of abortion and, therefore, not a perpetrator. See Zutz v. State, 52 Del. 492, 160 A.2d 727 (1960). As the Connecticut Supreme Court of Errors explained in State v. Carey, 76 Conn. 342, 56 A. 632, 636 (1904):
At common law an operation on the body of a woman quick with child, with intent thereby to cause her miscarriage, was an indictable offense, but it was not an offense in her to so treat her own body, or to assent to such treatment from another; and the aid she might give to the offender in the physical performance of the operation *1091 did not make her an accomplice in his crime. The practical assistance she might thus give to the perpetrator did not involve her in the perpetration of his crime. It was in truth a crime which, in the nature of things, she could not commit. And so it has been held, under various statutory forms of this offense, that the victim of an attempted abortion could not be an accomplice in a crime which consisted in an operation on her body, with or without her consent, by another person, with intent to produce abortion. Commonwealth v. Wood, 11 Gray, 85, 93; Commonwealth v. Boynton, 116 Mass. 343, 345; Commonwealth v. Follansbee, 155 Mass. 274, 277, 29 N.E. 471; State v. Hyer, 37 N.J. Law, 598.
Although the logic of such a doctrine persisting in today's political and social environment is questionable, it nonetheless continues to be the rule in those jurisdictions which have addressed the issue in recent times. See Basoff v. State, 208 Md. 643, 119 A.2d 917 (1956).
The operative statute upon which the state relies as the predicate felony here is section 390.001, Florida Statutes (1993) (termination of pregnancies). Section 390.001(2) sets forth the conditions precedent to the lawful termination of a pregnancy in the last trimester. Ashley met none of those conditions. Section 390.001(10), Florida Statutes (1993), provides:
(10) PENALTIES FOR VIOLATION.
(a) Any person who willfully performs, or participates in, a termination of a pregnancy in violation of the requirements of this section is guilty of a felony of the third degree....
(Emphasis supplied.) The state urges, without citation of authority, that the legislature's use of the term "any person" in section 390.001(10)(a) includes Ashley as a matter of law. We cannot agree. The common law of England in force and effect on July 4, 1776, continues to be the law of Florida unless it is inconsistent with the Constitution, is abrogated or modified by the legislature, or is modified by the Supreme Court under limited circumstances. § 2.01 Fla.Stat. (1993); Waite v. Waite, 618 So.2d 1360 (Fla.1993). Under the common law of England, an expectant mother could not be guilty of abortion. That rule remains the law of this state, unless we are to construe the words "any person" to be a legislative abrogation of the common law. That we are unable to do. As our supreme court in Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla. 1990), instructs us:
The presumption is that no change in the common law is intended unless the statute is explicit and clear in that regard. Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.
(Citations omitted.)
We, therefore, conclude that under the laws of this state an expectant mother may not be charged with abortion or attempted abortion and that the charge of third-degree felony murder in count II of the information fails to set forth a crime for the lack of a predicate felony.

MANSLAUGHTER (CROSS-APPEAL)
Count I of the information states:
KAWANA ASHLEY
in the County of Pinellas and State of Florida, on or between the 27th day of March and the 11th day of April, in the year of our Lord, one thousand nine hundred ninety-four, in the County and State aforesaid without lawful justification and by her own act, procurement or culpable negligence in shooting herself in the abdomen but without intent to murder, did inflict mortal wounds upon Brittany Ashley, a human being, of which said mortal wounds and by the means aforesaid and as a direct result thereof, the said Brittany Ashley died; contrary to Chapter 782.07, Florida Statutes, and against the peace and dignity of the State of Florida.
Ashley cross-appeals from the trial court's denial of her motion to dismiss this count. She argues that her prosecution violates due *1092 process in that the homicide statutes do not put her on notice that her conduct could constitute a crime; that the prosecution violates her right of privacy as a woman to make personal decisions regarding her pregnancy; and that she is being penalized for being a woman. The sum of this argument appears to be that because the child was her own, she was entitled to terminate its life.
To address these arguments, we must attempt to define the act causing Brittany's death. Brittany was a person with the same rights and privileges of any other person (see Day v. Nationwide Ins. Co., 328 So.2d 560 (Fla. 2d DCA 1976)):
1. whose life was terminated by the intentional act of another (Ashley told the police she intended to hurt the baby); and
2. which act was not:
a. justifiable homicide under either section 782.02, Florida Statutes (1993), or chapter 766, Florida Statutes;
b. excusable homicide under section 782.03, Florida Statutes (1993) (accident);
c. murder under section 782.04, Florida Statutes (1993); or
d. suicide or death by natural causes.
Therefore, by process of elimination, Ashley's act of shooting her fetus can only fall into the category of manslaughter.
Manslaughter is defined:
782.07 Manslaughter.The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 782.07, Fla.Stat. (1993).
Ashley argues that because culpable negligence can form the basis of manslaughter, the upholding of this charge may lead to prosecutions or civil actions for a woman's negligent decision making regarding her pregnancy or ignoring the advice of her doctor.[3] We find this to be highly unlikely in view of our supreme court's holding in Johnson *1093 v. State, 602 So.2d 1288 (Fla.1992) (court held it is against legislative history, public policy, and common sense to convict a mother of "delivery" of a controlled substance to her baby through the umbilical cord seconds after birth). By this holding, we do not suggest that the state may never prosecute a woman for egregious negligence. In that regard, we must depend on the professional responsibility of our various state attorneys and the protections provided in our courts, as illustrated by Johnson.
Therefore, we conclude that the trial court did not err in denying Ashley's motion to dismiss the manslaughter charge. We certify to the Florida Supreme Court, as questions of great public importance, all issues presented in this case and specifically the following:
1. MAY AN EXPECTANT MOTHER BE CRIMINALLY CHARGED WITH THE DEATH OF HER BORN ALIVE CHILD RESULTING FROM SELF-INFLICTED INJURIES DURING THE THIRD TRIMESTER OF PREGNANCY?
2. IF SO, MAY SHE BE CHARGED WITH MANSLAUGHTER OR THIRD-DEGREE MURDER, THE UNDERLYING PREDICATE FELONY BEING ABORTION OR ATTEMPTED ABORTION?
Affirmed.
THREADGILL, C.J., and ALTENBERND, J., concur.
NOTES
[1] Section 390.011(6), Florida Statutes (1993), defines the "third trimester" as the weeks after the twenty-fourth week of pregnancy.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] In 1992, the Supreme Court of New Hampshire in Bonte v. Bonte, 136 N.H. 286, 616 A.2d 464 (1992), recognized a civil cause of action in negligence by a born alive child against her natural mother. The action brought by the father as next friend alleged that the defendant pregnant mother had been negligent in failing to use reasonable care in crossing a street where she was struck by a car. She was taken to a local hospital where her daughter was delivered by Cesarean section with catastrophic brain damage. The court said:

Because our cases hold that a child born alive may maintain a cause of action against another for injuries sustained while in utero, and a child may sue his or her mother in tort for the mother's negligence, it follows that a child born alive has a cause of action against his or her mother for the mother's negligence that caused injury to the child when in utero.
The defendant urges us to immunize the mother from tort liability based upon public policy reasons grounded in the unique relationship of the pregnant woman to her fetus. While we recognize that the relationship between mother and fetus is unique, we are not persuaded that based upon this relationship, a mother's duty to her fetus should not be legally recognized. If a child has a cause of action against his or her mother for negligence that occurred after birth and that caused injury to the child, it is neither logical, nor in accord with our precedent, to disallow that child's claim against the mother for negligent conduct that caused injury to the child months, days, or mere hours before the child's birth.
The defendant further argues that public policy dictates against the plaintiff's cause of action because allowing this matter to proceed "deprives women of the right to control their lives during pregnancy ... [and] unfairly subjects them to unlimited liability for unintended and often unforeseen consequences of every day living." We disagree that our decision today deprives a mother of her right to control her life during pregnancy; rather, she is required to act with the appropriate duty of care, as we have consistently held other persons are required to act, with respect to the fetus. The mother will be held to the same standard of care as that required of her once the child is born. Whether her actions are negligent is a determination for the finder of fact, considering the facts and circumstances of the particular case. Moreover, if a determination based upon public policy can be made denying a cause of action logically recognized by our case law, that determination should be made by the legislature.
Accordingly, we hold that a child born alive has a cause of action in tort against his or her mother for the mother's negligent conduct that results in prenatal injury.
616 A.2d at 466. Contra Stallman v. Youngquist, 125 Ill.2d 267, 126 Ill.Dec. 60, 531 N.E.2d 355 (1988).