No. 15-0021  –  *State of West Virginia v. Stephanie Elaine Louk*

**FILED**

**June 3, 2016**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Davis, Justice, concurring:

An old adage counsels, "hard cases make bad law." Truer words could not be spoken of the case *sub judice.* Despite our different views as to the appropriate decision herein, all members of the Court agree that what has occurred in this case is nothing short of an unspeakable tragedy–a tragedy for the young victim who did not live to see her childhood and a tragedy for the child's mother who was gripped by the throes of addiction and is now, through her own actions, forever without her child. While the facts of this case are difficult, the law governing these proceedings is not. This is so because the Legislature clearly has defined those behaviors that are punishable as criminal acts and those that are not. Because the majority of the Court properly accepted the Legislature's plain and unambiguous language and correctly applied that law to reach its decision of this case, I concur in the majority's opinion.

Through this concurrence, I do not wish to rehash that which my brethren so astutely and eloquently have stated. In rendering the majority's decision, Chief Justice Ketchum conducts a thorough statutory analysis, applying the plain meaning of the words employed by the Legislature in enacting W. Va. Code § 61-8D-4a (1997) (Repl. Vol. 2014)

1

and reconciling that provision with other, similar statutes to ascertain the precise meaning of the word "child" intended by the Legislature. Moreover, to the extent that this case presented a tempting opportunity for this Court to adopt its own policy preferences over those expressly chosen by the Legislature, the majority has demonstrated admirable, and appropriate, restraint insofar as

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.

Syl. pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009).

I do, however, wish to take this opportunity to correct numerous inaccuracies and inconsistencies contained in the separate opinion of my dissenting colleagues for fear that their rhetoric may provide the basis for a misguided analysis should this issue be revisited by this Court or the Legislature. In an opinion that purports "to apply the law in accordance with our established principles of jurisprudence," this touted refrain becomes just that as the resulting diatribe, instead, contorts and confounds the law with a disjointed statutory analysis that confuses, rather than clarifies, the governing legal principles.

2

***Statutes Relating to the Same Subject Must Be Read In Pari Materia***

We long have held that statutes pertaining to the same subject matter must be read in *pari materia*:

> Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.

Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W. Va. 14, 217 S.E.2d 907 (1975). Stated otherwise, it is proper to look to corresponding statutes to provide guidance in interpreting and applying a controverted statute. *See* Syl. pt. 3, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("Statues which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments."). Here, the majority properly considered and compared the language of W. Va. Code § 61-8D-4a and W. Va. Code § 61-2-30 (2005) (Repl. Vol. 2014) in ascertaining the Legislature's intent in promulgating these provisions and determining that

> [t]he Legislature did not make any reference to an "unborn child" or "fetus" in W. Va. Code § 61-8D-4a [1997]. The statute only refers to a parent neglecting "a child" under his or her care, custody or control. Therefore, W. Va. Code § 61-8D-4a, our child neglect resulting in death statute, does not encompass prenatal acts that result in harm to a subsequently born child.

Maj. op. at Syl. pt. 2.

By contrast, the dissenters, while recognizing the existence of these two, distinct statutes, simply ignore the statutory construction canon of in *pari materia* and fail to reconcile the two provisions to achieve a harmonious, rather than discordant, interpretation. Instead, the construction proposed by the dissenting opinion will produce incongruous results: under the facts of the case *sub judice*, Ms. Louk could be prosecuted under W. Va. Code § 61-8D-4a but her same conduct would be exonerated by W. Va. Code § 61-2-30(d)(5). That W. Va. Code § 61-8D-4a pertains solely to neglect resulting in a child's death whereas W. Va. Code § 61-2-30 contemplates more heinous offenses is of no moment insofar as the victim's ultimate fate, under both statutes and the facts at issue herein, is her untimely death. In fact, this similarity between the two statutes is further evidence that the provisions should be construed consistently with one another or in *pari materia* insofar as the Legislature is presumed to know of its prior statutes and to intend statutory enactments to form one unified body of law.

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it was intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

4

Syl. pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908). *See also Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) ("'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992)))).[1]  Nevertheless, the dissenters inexplicably ignore this canon of statutory construction, yielding more confusion than clarification of the applicable law.

### *Avoidance of Unjust or Absurd Results*

Similarly, the statutory construction canons direct reviewing courts to avoid unjust or absurd results.

> It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice.  It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

---

[1]It also should be noted that where two statutory provisions simply cannot be reconciled, the statute last enacted is controlling. *See State ex rel. Pinson v. Varney*, 142 W. Va. 105, 109, 96 S.E.2d 72, 74 (1956) ("If the several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature."). Although the plain language of W. Va. Code § 61-8D-4a (1997) (Repl. Vol. 2014) answers the interpretative question presented by the case *sub judice*, if the Court had determined that W. Va. Code § 61-8D-4a and W. Va. Code § 61-2-30 (2005) (Repl. Vol. 2014) could not be reconciled, the latter statute, which exempts a mother from criminal liability for her actions that cause harm to her unborn child, would be controlling, which result is consistent with that obtained by the majority's opinion herein.

5

Syl. pt. 2, *Click v. Click*, 98 W. Va. 419, 127 S.E. 194 (1925). *Accord State ex rel. Pinson v. Varney*, 142 W. Va. 105, 109, 96 S.E.2d 72, 74 (1956) ("Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions." (internal quotations and citation omitted)). As my concurring colleague, Justice Benjamin, has duly noted, however, the dissenters also have refused to heed this "established principle[] of jurisprudence" by embarking upon their own quest to ascertain the meaning of the word "child" as that term is used in W. Va. Code § 61-8D-4a.

In the case *sub judice*, the majority, faced with a statute that did not definitively answer the question as to whether the statutory reference to "child" includes "unborn children," correctly compared the subject definition with the Legislature's definitions of the term in other, corresponding statutes. Upon concluding its inquiry, the majority then determined that, the term "child," as used in W. Va. Code § 61-8D-4a, pertains solely to children in being and does not include those yet to be born. By contrast, the dissent's strained interpretation of this term produces inconsistent and absurd results when it is logically extended to other statutory provisions employing the term "child." *See, e.g.*, W. Va. Code § 17C-15-46 (2005) (Repl. Vol. 2013) (requiring "[e]very driver who transports a *child* under the age of eight years in a passenger automobile . . . shall . . . provide for the protection of the *child* by properly placing, maintaining and securing the *child* in a *child* passenger

6

safety device system . . . ." (emphasis added)); W. Va. Code § 49-7-101 (2015) (Repl. Vol. 2015) (adopting "Interstate Compact on the Placement of Children"; delineating procedure for child placements between states; and defining "child" as "a person who, by reason of minority is legally subject to parental, guardianship or similar control").  Again, the dissenters' failure to follow the established canons of statutory construction results in disparate results that certainly were not contemplated, or intended, by the Legislature in enacting the subject statute.

### *Legislators, Not Justices, Make Public Policy Determinations*

Furthermore, despite repeated admonitions to follow the law and to leave policy decisions to the Legislature, the dissenting opinion nevertheless ignores the plain statutory language and substitutes its own policy preferences for those of Legislature.  It is well-established that a statute's plain language should not be construed but should be applied as it is written.  *See* Syl. pt. 4, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the law-making body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery.").  Likewise, it is accepted that matters relating to the establishment or soundness of public policy are left to the wisdom of the Legislature and are not within the purview of this Court.  *See* Syl. pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143

7

S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy."); Syl. pt. 1, *State Road Comm'n of West Virginia v. County Court of Kanawha Cnty.*, 112 W. Va. 98, 163 S.E. 815 (1932) ("Courts are not concerned with questions relating to the policy of a legislative enactment. These questions are solely for the legislature."); Syl. pt. 3, *George v. Board of Ballot Comm'rs*, 79 W. Va. 213, 90 S.E. 550 (1916) ("The policy of a statute is legislative, not judicial, and it is the exclusive province of the legislature to declare the scope and extent thereof by its prescription of measures of enforcement and otherwise.").

Despite its protestations to the contrary, it is clear that the result proposed by the dissenters' opinion is based solely upon their preferred policy pronouncements as their failure to abide by established canons of statutory construction cannot otherwise be explained. Although they proclaim that, "[r]egardless of any feelings we may have regarding what the law *should be*, the Legislature announces what the law *is*," my dissenting brethren nevertheless profess that the statute under scrutiny, W. Va. Code § 61-8D-4a, should apply to criminalize Ms. Louk's actions. This suggested interpretation is directly contrary to the statute's plain language; cannot be reconciled with the Legislature's other, corresponding statutes; and does not comport with the Legislature's unmistakable intent in enacting such legislation. Again, the dissenters preach one set of rules, but practice another.

8

## *Inappropriate Reliance on Inapposite Authority*

Aside from the failure to acknowledge and apply the prevailing canons of statutory construction, I would be remiss if I did not also note that the cases relied upon by my dissenting brethren as suggesting that other courts would apply the born alive rule to hold a mother criminally liable for her child's *in utero* injuries caused by the mother's actions do *not* have the same fact pattern as the case *sub judice*. That is, *all* of the extra-jurisdictional authority cited for this proposition involves harm to the unborn child that was inflicted by a person *other than the child's mother*. *See Ranger v. Georgia*, 249 Ga. 315, 290 S.E.2d 63 (Ct. App. 1982) (unborn child born prematurely after pregnant mother's boyfriend shot her in the head; child died shortly after birth); *Illinois v. Bolar*, 109 Ill. App. 3d 384, 64 Ill. Dec. 919, 440 N.E.2d 639 (1982) (unborn child injured when intoxicated driver hit car in which pregnant mother and unborn child were passengers; child died shortly after birth); *Jones v. Kentucky*, 830 S.W.2d 877 (Ky. 1992) (unborn child injured when intoxicated driver hit car in which pregnant mother and unborn child were passengers; child died shortly after birth); *Williams v. Maryland*, 316 Md. 677, 561 A.2d 216 (1989) (unborn child injured when pregnant mother was fatally shot by arrow as pedestrian bystander caught in crossfire between defendant and another man; child died shortly after birth); *New Jersey v. Anderson*, 135 N.J. Super. 423, 343 A.2d 505 (1975) (unborn twins born prematurely after pregnant mother was fatally shot; both children died shortly after birth); *New York v. Hall*, 557 N.Y.S.2d 879, 158 A.D.2d 69 (1990) (unborn child injured when pregnant mother was shot

9

in the abdomen as a passerby caught in crossfire between defendant and another man; child died shortly after birth); *Cuellar v. Texas*, 957 S.W.2d 134 (Tex. Ct. App. 1997) (unborn child injured when intoxicated driver hit car in which pregnant mother and unborn child were passengers; child died shortly after birth). While the majority opinion also relied on cases from our sister jurisdictions to support its ultimate decision, those cases, unlike the ones cited by the dissenters, are based upon rulings rendered under fact patterns similar to the one presently before the Court and that are instructive to the Court's analysis. Thus, rather than providing solid authority to support its position, the foundation upon which the dissenting opinion seeks to base its inapposite view necessarily crumbles.

In their attempt to suggest shortcomings with the majority's analysis, the dissenters, instead, eschew well-established principles of statutory construction in favor of a hodge podge approach that selects those canons supportive of their position while ignoring the rest. Because the majority's opinion herein is well-reasoned, legally sound, and reaches the correct result under the governing statutes, I concur in the majority's decision in this case.